(Decided 4th June, 1874.)

WILLIAM MAXWELL, WILLIAM WOODVILLE and WILLIAM HOLTZMAN, Assessors, *vs.* THE STATE OF MARYLAND, *ex relatione* ROBERT T. BALDWIN.

*Statutes not in Pari materia—Act of 1874, ch. 514, providing for the general Valuation and Assessment of property in the State, pronounced Unconstitutional and void—Unconstitutional Legislation.*

The Act of 1874, ch. 514, providing for the general valuation and assessment of property in the State, and the Act of 1874, ch. 483, repealing Article 81 of the Code, entitled "Revenue and Taxes," and re-enacting the same with amendments, are not *in pari materia;* they do not form parts of one system, but relate to different subjects, were passed for different objects, and are quite independent of each other.

The Act of 1874, ch. 514, by its first section declares, "that all property, real, personal and mixed, of all kinds and descriptions whatever in the State," except certain property therein particularly named, "shall be ex-

·*empt* from taxation for State or local purposes." It was insisted by the appellee, on a petition for a mandamus, that it was the duty of the appellants, assessors appointed under the foregoing Act, notwithstanding its terms, to go on and value, and assess all the property in the State, except what was enumerated in said section; that this last was intended to be exempt, and that which the words of the Act declared to be exempt, was intended to be made liable to assessment and taxation. HELD:

That whatever may have been the intention of the Legislature, the language of the section being plain and unambiguous, it must be understood according to its plain and natural import; and being so understood, the section was unconstitutional and void, as exempting from taxation, all the property of the State, except a small portion specified, which only was thus by implication made subject to taxation; such exemption was in plain violation of Article 15 of the Declaration of Rights, which declares, "that every person in the State, or person holding property therein, ought to contribute his proportion of public taxes, for the support of the Government, according to his actual worth in real or personal property," &c.

The Act of 1874, ch. 514, for the general valuation and assessment of property in the State, by its sixth section, made it the duty of the Comptroller to prepare all necessary blanks and forms to be used by the assessors in their respective assessment districts, and to make such rules and regulations for the assessment of the property in the State, as would assure a correct and uniform assessment; and in a subsequent section declared, that such rules and regulations, forms and blanks as prescribed and adopted by the Comptroller, should have the same effect and force in law, as if they were enacted in said Act. HELD:

That the Legislature had no constitutional authority to declare, that such "rules and regulations," whatever they might be, should have the same effect and force, as if they were enacted as a part of the law; they could only have the force of law, in so far as they might be made in conformity with the provisions of the Act.

APPEAL from the Superior Court of Baltimore City.

The petition of the appellee, filed in this case, alleged, that on the 11th of April, 1874, an Act was passed by the General Assembly of Maryland, providing for the general valuation and assessment of property in the State, and among other things provided for in the Act, assessors were required to be appointed by the Governor for each of the

assessment districts of the City of Baltimore and counties of the State, to assess and make the valuation by said Act directed ; that in pursuance of the provisions of said Act, the Governor appointed the appellants assessors for the third assessment district in the City of Baltimore, who duly qualified ; that on the same day, to wit : the 11th of April, another law was passed repealing Article 81 of the Code of Public General Laws, entitled, "Revenue and Taxes," and re-enacting the same with amendments ; that by section 2 of the amended Article, all property of every kind, nature and description whatsoever, was made liable to assessment and taxation, except as therein provided.

That by section three of said Article, an enumeration was made of certain properties which should be exempt from taxation, subject, nevertheless, to the proviso therein contained as to the extent of said exemption. That by section one of the first named Act of Assembly all property, real, personal and mixed, in the State, was made liable to assessment and taxation, except the property therein specifically enumerated, which by the terms of said section was exempted from taxation for State or local purposes, subject, nevertheless, to a proviso therein set forth.

The petition further alleged, that by virtue of the said several Acts of Assembly, and the provisions thereof, all the property, real, personal or mixed, of all kinds in the State, unless specially excepted in sections 2 and 3, of Art. 81 of the Code aforesaid, or of section one of chap. 514 of the Acts of Assembly, 1874, was liable to assessment and taxation as aforesaid ; that the Comptroller of the Treasury had prepared all necessary blanks and forms to be used by the assessors in their respective assessment districts, and made such rules and regulations for the assessment of property in the State, as would insure a correct and uniform assessment, and had furnished all blank

forms, rules and regulations to the defendants, and had demanded that they should proceed to assess all the property required to be assessed, as enumerated in the said Article of the Code, and the Act of Assembly, chap. 514 aforesaid, to be assessed and valued.

And further, that Robert T. Baldwin, the relator, was a citizen of Maryland, residing in the said assessment district, in the City of Baltimore, and the owner of real and personal property therein, assessable under the provisions of said Article and Act. That it was necessary that said assessments and valuations should be made, in order to ascertain the proper basis for the levying and collecting of taxes for State and local purposes. Nevertheless, the defendants, assessors as aforesaid, had refused, and still refused to make assessment and valuation of said property in manner and form as aforesaid, and execute the duties imposed upon them by said Act of 1874, chap. 514, whereby the administration of the public revenue was obstructed, and the citizens residing in said assessment districts, more especially, were injured and deprived of having an uniform and correct assessment and valuation of their property, for the purposes in said Act provided.

It was further alleged that there was no proper or adequate remedy by which the said assessors might be required to discharge the duties and functions of their office, except by the *writ of mandamus*, commanding them to proceed to discharge the same. The petition, therefore, prayed that a writ of mandamus might issue, directed to the defendants, assessors as aforesaid, commanding them to proceed to assess and value all the real and personal property of whatever kind, lying and being in their said assessment district, as provided for in section 2 of Art. 81 of the Code of Public General Laws, as amended and re-enacted by the Act of 1874, chapter 483, except such property as might be exempted from taxation by sections 2 and 3 of said Article, and section one of the Act of

1874, chap. 514, as aforesaid, commencing in said section one, at the word "except," and following thereafter to the end of said section, under the rules and regulations provided as aforesaid, by the Comptroller of the Treasury.

The respondents answering, admitted their appointment and qualification as assessors in the manner and form averred in the petition, and that the said Comptroller had made and furnished to them blanks and forms and rules and regulations for the conduct and execution of their said office as alleged in the petition.

They further admitted that a demand had been made upon them by the Comptroller of the Treasury and by the relator to proceed with the assessment of the real and personal property in said petition mentioned, and that they had refused and still refused to proceed to the assessment thereof, because, first, they were advised that they had no authority to assess said property, because the said Act of Assembly of 1874, chap. 514, was void for uncertainty; and secondly, because they were advised that the said Act of 1874, chap. 514, under and by virtue of which they were appointed by the Governor as assessors, exempted from assessment and valuation all property, real, personal and mixed, in the State, except *that* which the *petition* set out as being exempted from assessment and valuation, under and by virtue of said first section of the Act of 1874, ch. 514, and the proviso, and that by the first section of the said Act, the property alleged in the petition to be exempt from assessment and valuation, under and by virtue of said first section, was liable to assessment and valuation.

They further admitted that the relator was a citizen of Maryland, residing in said assessment district of the City of Baltimore, and the owner of assessable property therein, as averred.

They further admitted all other matters of fact in the petition alleged, but denied the conclusions of law. By

agreement of counsel, a *pro forma* order was passed, the Court, (DOBBIN, J.,) awarding a peremptory writ of *mandamus.* From this order the respondents appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*James A. McClure,* for the appellants.

The appellants by virtue of their appointment and qualification, have nothing to do with the Act of 1874, ch. 483, and it has nothing to do with them ; they are not controlled by any of its provisions, and have no duties of any kind to perform under it, and cannot legally be required to perform any—their authority and power are circumscribed and limited by the Act of 1874, ch. 514, under and by virtue of which they were appointed and qualified, and they cannot legally be commanded to perform any duties outside of that Act.

This will be readily seen by comparing the two Acts. They constitute two systems, and put into operation distinct machinery for each.

The Act of 1874, ch. 483, is most full, thorough and exhaustive in its search after taxable property. No property which has not been valued and assessed—none that has been omitted from valuation and assessment—none that has come into existence, or been created or acquired since the last assessment, of what kind soever it may be— none that can possibly be discovered as unvalued and unassessed—none that has been obtained from the State by patent—none that can be got out of persons on oath as unvalued and unassessed—none that moves about from county to county or city—none that comes into the State from abroad—none whatever of any kind in the State and *in esse,* and not already valued and assessed, but what will be caught by this most searching Act, and subjected to valuation, assessment and taxation.

This Act brings into the taxable basis not only all property of every kind heretofore unassessed, but also provides for the assessment of property heretofore assessed—or, in other words, for a new assessment.

For these purposes the Act creates its own officers—particularizes their duties—compensates them for the performance thereof, and punishes them for the non-performance thereof.

The appellants, who were appointed and qualified under the Act of 1874, ch. 514, are to assess and make valuations *as directed by this Act;* they are to be paid for the service performed by them *under this Act*—they are sworn to execute the duties of their office diligently and faithfully, *according to the directions of this Act*—they are to meet at the City Hall in Baltimore city *to take into consideration this Act,* and the instructions of the Comptroller as to the *manner* in which the duties imposed upon them *by this Act* shall be executed—it is the duty of a majority of them to be present *at the valuation and assessment of each and every variety of property directed to be assessed and valued by this Act,* and if they shall fail or neglect to perform certain duties *agreeably to this Act,* they shall be liable to indictment in the Criminal Court of Baltimore city, and upon conviction be fined not exceeding five hundred dollars.

What is the *property* "directed to be assessed and valued by *this* Act?" Clearly the property embraced in the exception of the first section only, *for "all" other "property, real, personal and mixed, of all kinds and descriptions whatever in the State,"* mentioned in said first section, are *"exempt from taxation for State or local purposes."* These are the words of the statute. They have a plain meaning, and are the very words which the Legislature had to use to exempt such property from taxation. And such must be construed to be their meaning, for the Act is of equal dignity with any other passed by the Legislature. It had the same scrutiny as any other Act—went through the same

process to become a law as any other, and must be interpreted in the light of its plain language. *Baugher, et al. vs. Nelson,* 9 *Gill,* 303, 304 ; *Alexander vs. Worthington,* 5 *Md.,* 471, 485 ; *Green vs. Wood,* 7 *Adol. & Ellis, N. S.,* 178, 185, (53 *Eng. Com. Law ;*) *King vs. Burrell,* 12 *Adol. & Ellis,* 468 ; *Lamond vs. Eiffe,* 3 *Adol. & Ellis,* 910, *N. S.,* (43 *Eng. Com. Law,* 1034 ;) *Everett vs. Wells,* 2 *Scott N. R.,* 531 ; *Woodbury vs. Berry,* 18 *Ohio State Rep.,* 456.

These appellants are not legally compellable to assess any other property than that made subject to assessment under this Act of 1874, ch. 514. To compel them to assess any other property, would be. to compel them to assess property not directed by this Act to be assessed—would be to make them perform services without compensation, and would be to make them violate the sanctity of their solemn oaths.

The appellee contends, that the first section of the Act of 1874, ch. 514, and the second and third sections of the Act of 1874, ch. 483, are identical, and subject the same property to taxation, and exempt the same property from taxation. They are not so in language, and cannot be legally so construed. The plain principles of the law, and the authorities already quoted show this.

They are directly, wholly and fully in conflict. What the one statute taxes, the other exempts ; and what the one exempts, the other taxes. They are exactly opposed, one to the other ; and unless the later, ch., 514, (the one under which these appellants were appointed and qualified,) repeals the earlier ch., 483, (*Metropolitan Board of Health vs. Schmades,* 3 *Daly, N. Y.* 282,) they necessarily destroy each other, for both were approved, and both took effect on the same day, to wit: April 11th, 1874. If they do destroy each other—that is to say, if the said last mentioned sections do destroy each other, then these appellants are not compellable to assess property under either Act, for there is no property to be assessed under either, and taxation must "be levied upon the assessment heretofore made." *Act* 1874, *ch.* 483, *sec.* 1.

Maxwell, *et al.* Assessors, *vs.* State, *ex rel.* Baldwin.

Nor can the two statutes be construed together upon the well known principle of construing statutes in *pari materia.* That principle is, that where two or more statutes relate to the same subject-matter, it will be presumed or inferred that they were intended to be governed by one spirit and by one policy. They are to be taken together as one law, and as constituting one system. *State vs. Milburn, et al.,* 9 *Gill,* 112 ; *Sedgwick on Stat. and Const. Law,* 247.

Even if chapter 514 be unconstitutional in its first section, in being violative of the 15th Article of the Declaration of Rights, which says, that " every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property ;" still these appellants cannot legally be compelled to assess and value any property in the State, since their authority and power are limited exclusively by said Act of 1874, ch. 514 ; and when the first section of said Act is gone, their occupation is also gone.

Such interpretation would, however, leave the Act of 1874, ch. 483, untouched in its integrity, and the system of valuation and assessment laid down by it would obtain and go into effect. But there is a further objection to compelling these appellants to go on with their assessment, even under the Act of 1874, ch. 514.

A careful reading of the whole Act will show it to be, in almost every section, so obscure, so confused, so contradictory, and so unmeaning, that if these appellants attempted performance of their duties thereunder, they would be met with obstacles in their almost every step, while litigation piled on litigation would be the fruit of their labors, even if *they* proved not abortive.

*John H. Handy,* for the appellee.

There is no inconsistency between the two laws. The two laws are intended to provide for essentially different

ends. The one is avowedly for the purpose regulating the whole subject of taxation, laying down the principles upon which taxes are to be levied, and the modes by which they are to be collected.

The other was intended to ascertain what property there was in the State of the kinds liable to taxation, and its amount and value.

Their objects, then are different, though the subjects are identical. They are strictly *in pari materia*, being about *the same*, not similar subjects. In what respect does section 1, of chapter 514, differ from amended Article 81 of the Code?

It is claimed that the language "all property, real, personal and mixed of all kinds and descriptions whatever in this State," is the subject of the phrase, "shall be exempt from taxation for State or local purposes;" and that it is therefore in direct conflict with the Code. Do the words "shall be exempt, &c." belong to the first three lines of the section? Clearly they do not. The exceptions are grouped together, and are substantially those which have obtained exemption from the Act of 1841, down to the Code of 1860. There are some additions such as the stock of Building Associations, &c., to the extent of their capital "invested in mortgages on real or leasehold property subject to taxation." This clause is a key by which to ascertain to what the exemption applies. First. If the stock is to be taxed, as is claimed, not exempted, then it will be a double tax, one on the stock and one on the property already taxed, for it is limited to the stock of companies whose capital is invested in mortgages secured on *taxed* property. This is against the entire policy of our former legislation.

Secondly. It assumes that there is real and leasehold property subject to tax, whilst if the appellants' view be correct, all property is exempt, but the property in the exception. This is connected directly with hospitals, asylums, &c.

The immediate antecedent of the language "shall be exempt," is "stocks and securities held by such literary, charitable or benevolent institutions;" which it says, "shall be exempt from taxation for State and local purposes; provided, the whole value of such stocks or securities held, by any one of said institutions *so exempt,* shall not exceed the sum of $15,000, and that *all the other property of such institutions shall be liable to assessment and taxation as other property in the hands of individuals or other corporations.*"

It is the stocks and securities "so exempt," not "so taxed." If exempt, it is by the words above quoted, "shall be exempt, &c." To what then can that language apply, but to the class of property of which the stocks, &c., form part? If they do so apply to the subjects enumerated under the exception, it is equally clear they cannot apply to the part of the section that precedes it.

What is to be done with all the other property, &c., in excess of the $15,000 stocks or securities? The proviso distinctly and without equivocation or ambiguity, says it shall be liable to assessment and taxation as other property in the hands of individuals and corporations. As other property is what? By applying the ordinary rules of grammar and supplying the ellipsis, we have, "as other property, &c., is liable to taxation."

But suppose the body of the section gave no evidence of its true meaning, what would be the legal effect of the proviso? The rule is established "that where the proviso of an Act of Parliament is directly repugnant to the purview, the proviso shall stand, and be held a repeal of the purview, as it speaks the last intention of the makers." *Sedgwick on Statutory and Const. Law,* 62; *Attorney Gen. vs. Chelsea Water Works Co., Fitzzibbon,* 195; 2 *Dwarris on Stat.,* 515; *Rex vs. Justices of Middlesex,* 2 *Barn. & Adol.,* 818; *Wayman vs. Southard,* 10 *Wheat.,* 1, 30.

But what "other property in the hands of individuals and corporations is then liable to assessment and taxation,"

if the theory of the appellants is correct? All property, real, personal and mixed, in the State other than enumerated in the exception is exempt. There could be no such property as the proviso points to.

Is it not apparent that the error has occurred in omitting something before the word "except," not in the insertion of the words "shall be exempt?" The omitted words are "shall be liable to assessment and taxation." And the proviso sufficiently supplies them to intelligently inform the Court as to the intention of the Legislature. If it does the Court must declare it, however infirmly or defectively expressed.

But suppose the proviso does not clearly indicate that the property scheduled before the exception is the other property meant, what then? The proviso does not say "as other property is taxed by this Act." It simply, but positively announces that other property is liable to assessment and taxation, and that the property of these institutions is to be taxed in like manner.

Where are we to look for the law to govern us, that is alluded to in the proviso? Section 19 of the Act itself answers the question, "all existing laws of this State that may come in aid of the provisions of this Act, shall apply and be construed as part thereof." If then the taxation of no property, but the excess of that covered by the exception in section one of chapter 514, is provided for by that section, and all other property is left unprovided for, the contemporaneous and existing legislation supplies the omission. Section 2, of the amended Article 81 of the Code, aids the Act, and fully fills the gap.

A comparison of section 3, of Article 81 of the Code, with the exception in section one, chapter 514 of 1874, shows that the latter is the same as the former, with a few additional exemptions.

But it is said section one, of chapter 514, is a nullity, because too ambiguous and uncertain. If that be so, how

can it affect the question? Does not the 19th section make all existing legislation in aid of that a part of that Act? Section one is not necessary to the Act, nor to the discharge of the duties the assessors are called on to discharge. Strike it out, and the remainder of the Act is susceptible of being executed. Article 81 of the Code is a part of that Act. Section 2, of the Act at most only furnishes a schedule of what shall be taxed, and what exempt. But sections 2 and 3, of Article 81 of the Code, do the same, and in a mode not to be mistaken or misconstrued.

Now, if the two laws do not mean the same thing, it is clear the first section of the assessment law is too ambiguous to be construed. It cannot consistently with itself have another construction. It would therefore be void. But so soon as it is so declared, then the assessors are bound to proceed to their duties under secs. 2 and 3 of Art. 81 of the Code, as amended.

Any other view would declare one of two things. Either that all the bulk of the property in the State was exempt from taxation, and the burdens placed on a mere fragment, and that the portion, which according to the settled policy of the State, has hitherto been exempt. Or that the whole machinery of the assessment law was void, because of the infirmity in one section, although the law itself, as well as general and well settled principles, invoked the aid of contemporaneous legislation *in pari materia,* and such legislation was abundantly full to supply the void section.

Such a decision would violate the decisions of this Court in more than one case, where they have held a law not void *in toto* because one section was void. To have that effect the void section must be necessary to the execution of the law. *Davis vs. State,* 7 *Md.,* 151; *Mayor and Council of Hagerstown vs. Dechert,* 32 *Md.,* 384.

The assessors are bound to proceed to assess the property as prayed by the appellee. The *mandamus* was properly ordered to issue, and there is no error in the Court's judgment.

The intention of the Legislature is the *thing in doubt* and the thing to be ascertained. And it is the duty of the Court to find it out if possible, however dark the ambiguity. *Sedgwick's Stat. & Cons. Law,* 230, 231, 235, 236, 238.

In endeavoring to determine the intent of the lawmaker the whole statute must be taken together, though but one section is obscure. The preamble and even the titling may be looked to. The grounds of making the statute. The mischief to be remedied. The history of the time that gave it rise. *Sedgwick's Stat. and Cons. Law,* 50, 51, 54, 238-9.

Again all legislation in *pari materia,* especially if passed the same day. *Sedgwick on Stat. and Const. Law,* 247; *State vs. Boyd,* 2 *G. & J.,* 373; *Canal Comp'y vs. R. R. Co.,* 4 *G. & J.,* 152; *Scaggs vs. Balto. and Wash. R. R. Co.,* 10 *Md.,* 276; *Negroes Bell, et al. vs. Jones,* 10 *Md.,* 329; *Parkinson vs. State,* 14 *Md.,* 195-6, *et seq; Frazier vs. Warfield,* 13 *Md.,* 301, *et seq. to* 304.

BARTOL, C. J., delivered the opinion of the Court.

This is an appeal from a *pro forma* order of the Superior Court passed by consent, awarding a peremptory writ of *mandamus.* The ostensible purpose of the proceeding is to compel the appellants, who are assessors for the third assessment district of Baltimore City, to go on and value and assess all the property within their district, which the petition alleges to be liable to assessment under the Act of 1874, chapter 514. The real object of the proceeding is to obtain a judicial exposition of the Act of Assembly in question, and a definition of the powers and duties of the assessors under the Act, which the parties called upon to execute it have failed to find in its provisions.

The case is somewhat anomalous but as the proceedings are regular on their face, and the matter is one clearly within the jurisdiction of the Court; we cannot escape

Maxwell, *et al.* Assessors, *vs.* State, *ex rel.* Baldwin.

the duty and responsibility of expressing our judgment upon the questions involved in the appeal. These are succinctly stated in the petition and answer. The former alleges that all property, real, personal and mixed, is liable to assessment, except certain property particularly mentioned in the petition, and which is the same that is enumerated as "excepted," in the first section of the Act.

The answer alleges that the Act of 1874, ch. 514, is void for uncertainty; and secondly, that the said Act exempts from assessment and valuation all property, real, personal and mixed, in this State, except that which the petition sets out as being exempted from assessment and valuation, under and by virtue of the first section and the proviso thereto; and that by the first section of the said Act the property alleged in the petition to be exempt from assessment and valuation, is liable to assessment and valuation.

The questions for us to determine are, what is the meaning and effect of the Act of Assembly: and whether the duties of the assessors therein prescribed, are so defined, as that they can be understood, and their performance by the appellants enforced, according to the prayer of the petition. The Act is a long one consisting of thirty-six sections, containing many complex provisions, and requiring in its preparation considerable care and skill. Either from haste or inadvertence in its preparation, or carelessness in its engrossment, it is full of imperfections, some of the sections are incomplete, some of them are unintelligible, and many of its provisions are contradictory with one another. Some of these will be noticed hereafter. The principal question we have to deal with, is the duty of the assessors, and the first thing to be determined is what property are they authorized and required to value and assess. To ascertain this, recourse must be had to the provisions of the Act under which they have been appointed.

Where these are imperfect, or unintelligible or impractable, it is contended that we may resort to the Act of 1874, ch. 483, to supply its defects and control its meaning. The two Acts, it is said, are in *pari materia*, and are to be construed together, as parts of the same system. This constitutes the main ground of the argument on the part of the appellee. The petition refers to chapter 483 as containing the law for the government of the assessors and in the "Rules and Regulations" prepared by the Comptroller under the 6th section of the assessment law, (his instructions to the assessors;) departing altogether from the terms of the assessment law, he treats the Act, chapter 483, as applicable to the case, and refers to its provisions as his guide. Are these Acts in *pari materia?* and can we resort to one to supply the defects, and aid in the construction of the other?

This is a very important and vital question in the present case. To answer it, we must consider the nature and objects of the two statutes, and compare them together.

The Act of 1874, ch. 483, is an Act repealing Art. 81 of the Code entitled "*Revenue and Taxes,*" and re-enacting the same with amendments. It went into effect from the date of its passage. By its second and third sections it designates what property is liable to assessment and taxation, and what property is exempt. The Act provides within itself, a complete system for the levying and collection of taxes under the existing laws, on the basis of former assessments, provides the officers and machinery by which its provisions may be executed, former assessments may be altered and corrected, and the public revenue levied and collected. The assessment Act now under consideration forms no part of that system, it has no real or necessary connection with the existing revenue laws of the State; but is an Act providing for a new assessment for the purpose of fixing a future basis of taxation, which is to be completed by the first day of March, 1875. In such an

Act it was certainly not essential that the property liable to assessment, and that intended to be exempt, should be specified. It was quite competent for the Legislature, if such had been their intention, to have referred to the existing law on the subject of revenue and taxes, contained in the Code, Art. 81, as amended by the Act of 1874, ch. 483, and declared that the property therein mentioned as exempt, should not be liable to assessment; and in such case the 81st Article of the Code, as amended, would become and be construed as a part of the assessment law. Or the same result might have been accomplished by any apt words of reference, or appropriate terms expressing such to be the legislative will. But the Legislature did not see proper to adopt that course.

By the Act of 1874, ch. 514, now under consideration, they have proceeded to declare in positive terms, what property shall be exempt from taxation, for the purposes of the new assessment provided for by the Act.

It is evident that Article 81 of the Code, as amended, is altogether distinct from and independent of the Act of 1874, ch. 514. They are not in *pari materia,* but relate to different subjects, and there are no words in the latter which refer to or incorporate any of the provisions of the former; on the contrary, their provisions are dissimilar, and in some respects in conflict.

The words in the 19th section of the latter Act, declaring that "all existing laws of the State, that may come in aid of the provisions of this Act, shall apply, and be construed as part thereof," cannot have the effect of making the provisions of the Act of 1874, ch. 483, or any of them, a part of the assessment law. They perform no other office than to express in words what the rules of law already accomplish, which authorize the Court to construe Acts together, that are in *pari materia;* but we have said that this rule cannot apply to chapters 483 and 514 of the Acts of 1874; because they do not form parts of one sys-

tem; but relate to different subjects, were passed for different objects, and are quite independent of each other. The last named Act must therefore be construed by itself, without the aid of chapter 483; and we are next to consider what are the meaning and effect of its provisions.

The first section declares "*that all property*, real, personal and mixed, of all kinds and descriptions whatever in the State," except certain property therein particularly named, "*shall be exempt from taxation for State or local purposes.*" These are the words of the Act; they are plain and unambiguous. The petition alleges that it is the duty of the assessors appointed under the Act, notwithstanding its terms, to go on and value and assess all the property in the State, except what is enumerated in the first section, alleging that this last was intended to be exempt, and that what by the words of the Act is declared to be exempt, was intended to be made liable to assessment and taxation; and the Court is called on so to declare, in plain opposition to the words of the Act of Assembly. The main argument in support of this construction has been based on the provisions of another, independent Act, 1874, ch. 483, which we have already shown is not in *pari materia,* and cannot aid us in the construction of this assessment law. It is true that in arriving at its meaning, we are not confined to the first section alone, but must consider the whole Act, and construe all its parts together. This is a rule always to be observed in construing written instruments, and applies with great force to the construction of Acts of Assembly. *Frazier vs. Warfield,* 13 *Md.*, 302.

Applying this rule to the present case, the difficulty is not removed. We have looked in vain at the other sections of this Act, to find any justification for departing from the provisions of the first section, in order to determine from the language employed, what property is made liable to assessment, or declared to be exempt from taxation.

The oath of the assessors, prescribed by the seventh section is that they will faithfully execute the duties of their office according to the directions of this Act of Assembly. So in the 9th, 10th, 11th, 14th, 21st, 26th and 29th sections, it is provided that the assessment is to be made " as provided by this Act," and by the terms of the 10*th section* the assessment is to be made of "*property directed to be assessed and valued by this Act.*" Now there is no part of the Act, except the first section, which attempts to declare what shall be liable to taxation and what shall be exempt. To determine this, recourse must, of necessity, be had to the first section, to which all the subsequent sections point, and by which they must be construed, and, although, in some of them, as in the 12th section, are to be found provisions not entirely consistent with those in the first section ; they cannot have the effect of annulling or destroying the operation of the express words contained in the first section. When we look at the *proviso* there is much ambiguity, and if this could control the rest, we should be compelled to declare the whole inoperative for uncertainty ; for it would be impossible to say with certainty, from the language employed, what property the Legislature meant to exempt from taxation. But in the enacting clause, the words are plain and unambiguous, and must be taken as the expression of the legislative will. It is not in our power to expunge them from the statute, nor is it possible for us, by any legitimate rule of construction, to alter their meaning, or destroy their operation and effect. The rules governing Courts in the construction of statutes, have been often expressed, and are too well established to be now called in question.

In the recent case of *Clark vs. The Mayor & C. C. of Balto.*, 29 *Md.*, 283, this Court decided that while a statute should be construed according to the intent of the Legislature which passed it; to ascertain this intent " we are first to consider the words employed, and interpret them accord-

ing to their plain, ordinary and natural import, having some regard to their order and grammatical arrangement. If they are clear, precise and unambiguous, the Legislature must be understood to mean what it has plainly expressed."

The same rule is laid down by the Supreme Court in *Fisher vs. Blight*, 2 *Cranch*, 358, 399, where it is said: "When a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction."

Here the words of the Act are, as we have said, plain and unambiguous; the Legislature has declared that in the execution of this assessment law, all the property in the State shall be exempt from taxation, except what is particularly mentioned. It is very probable; nay, we feel quite sure, the Legislature intended to say something very different. There has evidently been some mistake or omission, and we are asked to correct the mistake or supply what has been omitted, in order to make the Act express what we suppose to have been the intention of the Legislature. We certainly have no power or authority to do so.

As said by BULLER, Justice, in *Jones vs. Smart*, 1 *Term R.*, 52, we are bound "to take the Act of Parliament as they have made it, a *casus omissus* can in no case be supplied by a Court of law, for that would be to make laws."

In *King vs. Inhabitants of Stoke Damerel*, 7 *B. & C.*, 568, BAYLEY, J., said, "I do not know how to get rid of the words of this section of the Act of Parliament, and when the Legislature, in a very modern Act of Parliament, have used words of a plain and definite import, it is very dangerous to put upon them a construction, the effect of which will be, to hold that the Legislature did not mean that which they have expressed."

In *King vs. Inhabitants of Barham,* 8 *B. & C.,* 103, TENTERDEN, C. J., said: "Our decision may, perhaps, in this particular case, operate to defeat the object of the 59 Geo. III; but it is better to abide by this consequence than to put upon it a construction not warranted by the words of the Act, in order to give effect to what we may suppose to have been the intention of the Legislature."

In *Smith's Commentaries on Statutory and Constitutional Construction,* 830, *sec.* 714, the rule, as deduced from the authorities, is stated to be, "that Courts must not, even to give effect to what they may suppose to be the intention of the Legislature, put upon the provision of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the Act."

We refer also to *Green vs. Wood,* 7 *A. & E., N. S.,* (53 *E. C. L.,* 183;) *King vs. Burrell,* 12 *A. & E.,* 460; *Lamond vs. Eiffe,* 3 *A. & E., N. S.,* (43 *E. C. L.,* 1034;) *Bloxam vs. Elsea,* 6 *B. & C.,* 176; *Brandling vs. Barrington,* 6 *Barn. & Cress.,* 475; *Dwarris on Statutes,* 702.

The rule governing the Courts in cases of this kind, is nowhere more clearly stated than by our predecessors, in the well considered case of *Alexander vs. Worthington,* 5 *Md.,* 485, as follows: "We are not at liberty to imagine an intent, and bind the letter of the Act to that intent; much less can we indulge in the license of striking out and inserting, and remodeling, with the view of making the letter express an intent, which the statute in its native form does not evidence."

In a recent case decided by the Supreme Court of Ohio, upon a statute, the Court say: "We are satisfied by considerations outside of the language, that the Legislature intended to enact something very different from what it did enact. But it did not carry out its intention; and we cannot take the will for the deed. It is our legitimate function to interpret legislation, but not to supply its omissions." *Woodbury & Co. vs. Berry,* 18 *Ohio,* 462.

Maxwell, *et al.* Assessors, *vs.* State, *ex rel.* Baldwin.

Constrained by these rules, and keeping in view the limits imposed upon our authority by the Constitution, which forbid us from making laws, we are compelled to say that the first section of the Act of Assembly now under consideration must be understood according to the plain import of its language; and so understood, it is impossible for the Court to enforce its execution; because it would be in plain violation of the 15th Article of the Declaration of Rights; which declares that "every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property, &c."

In the case of *The State vs. The Cumberland & Pennsylvania R. R. Co. ante* p. 22, it was held that this Article imposes limits upon the legislative power. It requires no argument to prove that a law which exempts from taxation all the property of the State, except a small portion specified in the Act, which only is thus by implication, made subject to taxation, is unconstitutional and void. Apart from the consideration, that among the property thus enumerated is some which the State has not the power to tax. On this ground, and because the assessment Act must receive this construction, according to its plain and positive provisions, it is our duty to declare that it is inoperative. Of course we do not impute such a purpose to the Legislature. It is evident that a mistake has occurred in drawing the law—something has been omitted. But we cannot correct the mistake or supply the omissions—we are compelled to take the law as the Legislature has enacted it. We have no power to change the words or to add provisions in order to make it express what we may suppose to have been the intention of the Legislature.

If they have failed to express their real intentions, it is for them and not for the Courts to amend the law, and make it express the legislative will.

Maxwell, *et al.* Assessors, *vs.* State, *ex rel.* Baldwin.

In former times, the Courts have exercised large discretion in dealing with statutes, and among the earlier cases in England, instances may be found in which the Courts, construing Acts of Parliament, have sometimes changed or disregarded their language, and imputed to them a meaning not warranted by their terms. The modern English decisions do not sanction such latitude of construction; and it has never been adopted in this country. On this subject, the observations of Mr. Sedgwick meet our approval. He says, "Indeed the idea that the Judges in administering the written law, can mold it and warp it according to their notions, not of what the legislator said, nor even of what he meant; but of what in their judgment he ought to have meant;—in other words according to their ideas of policy, wisdom or expediency, is so obviously untenable, that it never could have taken its rise, except at a time when the division lines between the great powers of government were but feebly drawn, and their importance very imperfectly understood. In the present condition of our political systems, this practice cannot be acted on with either propriety or safety. It must inevitably be attended by two great evils.

"It gives the judiciary a power almost arbitrary, and which cannot fail to be abused; and it leads to unbounded carelessness in the matter of legislation. There can be little inducement to caution or precision in drawing legislative enactments, if it is understood that all errors can be supplied, and indeed all provisions overridden by the mere exercise of the powers of judicial construction." *Sedgwick on Stat. & Const. Law,* 311.

We refer also to the opinion of Judge CHASE in *Prestman vs. U. States,* 4 *Dallas,* 30.

We have felt less hesitation in announcing our conclusion in this case because, although the Act of Assembly under consideration fails to take effect, no serious consequences are likely to ensue to the public. The system of

revenue and taxes provided by the Act of 1874, ch. 483, is in full force and operation; and if a new general assessment shall be deemed expedient, the Legislature may hereafter provide for it by a law more carefully framed. Even if this law were not obnoxious to the fatal objection we have stated, arising out of the provision in the first section, there are many defects, imperfections and inconsistencies in its other sections, which although they would not render the Act altogether void, yet if it were attempted to put it in operation, would inevitably be attended with difficulty, and perhaps give rise to much litigation. It is needless to point out particularly all these defects; some of them will be briefly noticed.

The 14*th section* is incomplete and fails to declare what is to be done by the "County Commissioners and Appeal Tax Court of Baltimore City," in the case there mentioned. It was suggested in the argument, that what was probably intended to form a part of the 14th section, has strayed from its appropriate place, and is incorporated at the end of the 19th section. But this is mere conjecture; the Courts would have no power to act upon it, and remodel the statute. It is obvious that the latter part of the 19th section is in some respects unintelligible; and the 14*th section*, by reason of its being incomplete, leaves a very important case that may arise under the law, without any provision whatever. The 23rd section, which relates to shares of stock held by non-residents, contains the extraordinary requirement, "that the president or other proper officer of the corporation, shall make out and deliver to the assessors *annually* an account of stock, &c."

Now how is that possible to be done, when the duties of the assessors are required by the Act, to be completed by the first Monday of December next—when their functions and duties will cease.

A similar provision is found in the assessment law of 1866, ch. 157, section 15, from which this 23rd section

was no doubt copied : but it must have been inserted in the Act of 1866 through some inadvertence. It can certainly have no sensible construction or effect in the Act before us.

The Act seems to us also to be defective in its provisions relating to Baltimore County. For while by the *5th section,* it is provided that a "Board of Control and Review," consisting of seven persons, shall be appointed for that County; in the subsequent sections, that board is altogether lost sight of, or ignored. They are not afterwards referred to except in the 32nd and 33rd sections.

The duties of receiving the returns of the assessors, hearing appeals, &c., are imposed in all the counties, upon the County Commissioners; this difficulty might perhaps be obviated, by construing the words of the Act, where they speak of County Commissioners, to mean, when applied to Baltimore County, "the Board of Control and Review." But such a construction would not be free from doubt or difficulty. It would certainly not be easy to apply to the members of that Board, the provisions of the 17th section, which impose upon the County Commissioners penalties for failing to perform the duties required of them by the Act, but make no mention whatever of the members of the Board appointed for Baltimore County.

The 34*th section* is liable to a most serious objection on constitutional grounds. It declares that the "Rules and Regulations, forms and blanks, prescribed and adopted by the Comptroller," as provided by the 6th section—"shall have the same force and effect in law as if they were herein enacted." Such a provision is clearly void, the Legislature has no constitutional authority to delegate to the Comptroller the power of making laws. Such is the import and effect of this section. Unquestionably the Comptroller may be required to prepare " *Rules and Regulations, &c.*" as provided by the sixth section, and they will be valid, so far as they are conformable to the pro-

visions of the law; but it is altogether without precedent, and beyond the power of the Legislature to declare that such "Rules and Regulations," whatever they may be, shall have the same effect and force as if they were enacted as a part of the law.

The effect of this provision would not be to avoid the whole Act; but it would be inoperative to give to the "Rules and Regulations" prescribed by the Comptroller the force of law, except in so far as they might be made in conformity with the provisions of the Act.

Being of opinion, for the reasons stated, that the Act of 1874, chapter 514, is inoperative; the *pro forma* order of the Superior Court will be reversed, and the petition dismissed.

*Order reversed.*

(Decided 5th June, 1874.)

STEWART, J., filed the following dissenting opinion.

The Act of the Legislature of 1874, ch. 514, entitled, "An Act to provide for the general valuation and assessment of property in this State," now in question, it is not denied, was enacted by the General Assembly, and approved by the Governor under all the forms and sanctions required by the Constitution.

The Act is substantially, and in most of its sections, a literal transcript of the assessment laws of 1852, ch. 337, and 1866, ch. 157, under and by virtue of which, the greater part of the revenues of the State have been collected; and its 19th sec. makes reference to the existing laws upon the subject, obligatory in its interpretation and enforcement.

But it is insisted by the respondents in the proceedings in this case, that it is incapable of any reasonable construction, and, therefore, must be pronounced by the Court an absolute nullity.

Its consideration involves a grave question of law, simply, and the power of judicial revision. It may be a very good thing *per se* to defeat the whole scheme; or it might turn out otherwise, but that is not a consideration that can enter into our deliberations upon the subject. We have nothing to do with the wisdom or policy of the law, as in political questions, but are bound to give to the Act such judicial construction as demanded by its terms and provisions, according to the established rules of interpretation. We do not sit as a board of supreme legislative review.

Conceding that the Act upon its face exhibits evidence of error and haste and imperfection, yet, according to my judgment, they are not sufficient to invalidate and destroy the Act.

It is concisely, and I think, soundly stated by Mr. Sedgwick, in his treatise on Statutory and Constitutional Law, 246 and 274, that where a case of doubt arises in regard to a statute, the first duty of a Judge is to ascertain the meaning of the Legislature, who framed it, that is, to construe or to interpret the statute, as the Legislature who framed it, would have done; and so long as by any legitimate means, the intent of the Legislature can be ascertained, the Judge is not permitted to seek any other mode of solving the difficulty.

To ascertain the meaning, the first resort is to the natural signification of the words according to their order and grammatical arrangement; if they embody any definite meaning, and involve no absurdity, and there is no contradiction between different parts, then they must govern. It is only where the controlling terms and provisions of the law are utterly beyond rational interpretation, that Courts will abandon it as a senseless nullity.

Omissions in laws and obscurity in their terms, are not by any means novelties; on the contrary, they are the fruitful source of endless litigation. If laws were always

perfect, and drawn in such terms as to be plain and intelligible, to the most common understanding, much of the business of the Courts would be reduced.

All the adjudications upon the construction of statutes are founded upon the ambiguity and defects of legislative enactment.

It is truly said by Smith in his book on Statutory and Constitutional Construction, 546, that the Legislature is composed but of men, and the language used by them is liable to all that uncertainty and imperfection that pertains to all that is of human origin, or that emanates from finite minds.

There will be more or less of obscurity in the words used, and great care should be observed that we do not, in all such cases, confound *interpretation with criticism.* The end of the latter is to find out, what are the words of the law-maker; of the former, what was their intent and meaning, and to clear up that meaning when obscure; to ascertain the sense of dubious words—to determine the design when imperfectly expressed.

Anybody, whether learned in the law or not, if he can comprehend language, may be able to understand the meaning of a plain and unambiguous law; but it is the duty of the Courts to interpret obscure laws and pronounce their meaning.

If, because of their defects, they are to become nullities, rarely will one be found that will stand such test.

It was a rule of the civil law, that whenever it happened, that the sense of the law, how clear soever, it may appear in the words, would lead to false consequences, and unjust decisions, if its literal sense were followed, the Courts were compelled to interpret it, not by what the law says, but what it means.

When literal construction would lead to absurd consequences, respect for the Legislature, will induce the Court to conclude that some other construction ought to be adopted.

Hence every construction which leads to an absurdity, ought to be rejected. It cannot be presumed that the Legislature intended anything absurd. When therefore the words, when taken in their obvious and proper sense, tend to it, it is necessary to turn them from that sense, sufficient to avoid an absurdity; if from the whole purview of the law, and giving effect to all the words in it, it may be fairly done.

If there are words susceptible of two different senses, the Court will adopt that which involves no absurdity.

A statute should never be so construed as to render it a nullity, or quite evade its force, because it is never to be presumed that the Legislature had nothing in view in making a law. *Smith on Const. Law, sec.* 527. It is only where it is not possible to ascertain the meaning, that the law will become a nullity from its imperfection.

Neither the Constitution nor the law requires a statute to be framed and arranged in sentences, and paragraphs, or with grammatical nicety and precision.

The Constitution merely confines its directions to the preparation of the law in sections.

No Court would be authorized to vacate a law, because of its bad grammar or defective phraseology, if it contained intelligible terms and provisions.

The reports of adjudged cases in this State are filled with decisions upon the construction of statutes, and even constitutional provisions; showing that our Courts have uniformly disregarded mere form, where the substance can be reached; and that great latitude has been exercised in the construction of their language, directions, omissions or defects, in order to effectuate the intention of the Legislature. Article 3, sec. 29, of the Constitution declares that the style of all laws of this State shall be, "Be it enacted by the General Assembly of Maryland."

In the absence of construction, a plain man at least, might have understood, that if the Legislature undertook

to pass a law without its containing this constitutional requisite, the Act would be void.

But this Court very recently, in the case of *McPherson vs. Leonard*, 29 *Md.*, 389, decided that the omission of those words did not invalidate the law, upon the ground, that they were not of the essence and substance of the law. It is true there was a division of the Court upon the subject, but the judgment of the Court stands as the established law of the State, to govern in the construction of the laws. If such omission by the Legislature in the enactment of a law to extract money from the Treasury of the State, did not invalidate the law; upon what different principle of construction, dispensing with words in a law, intended to provide steps to supply the Treasury with necessary funds, can it be held to be fatally impaired?

The words in the 1st section of the law now in question, supposed to be omitted, are not of the essence of the law; and its meaning and purpose may be ascertained upon the established principles of construction in this State, by judicial interpretation, without the sanction of legislative authority. In the celebrated case of the *Canal Company vs. R. R. Co.,* 4 *G. & J.,* 152, this Court laid down for our guidance, the rule of construction, that statutes should be construed with a view to the original intent and meaning of the maker; and that such construction should be put upon them, as best to answer that intention, which may be collected, from the cause or necessity of making the Act, or from foreign circumstances; and when discovered ought to be followed, although such construction may seem contrary to the letter of the statute. These principles of construction, says C. J., BUCHANAN, who delivered the opinion of the Court, have been recognized by Courts ever since the days of Roll, Plowden and Coke.

In *Brown vs. Somerville*, 8 *Md.*, 456, the same doctrine was held, that the words of an Act may be disregarded,

when it is necessary, to arrive at the intention of the makers.

This Court has decided in the case of *Davis vs. State*, 7 *Md.*, 160, that irrelevant matter may be rejected as void, whilst the principal subject of the law will be supported and that the statute may be good in part.

So recently as the case of *Mayor of Hagerstown vs. Deckert*, 32 *Md.*, 384, the same principle of construction has been reiterated and fully sustained.

It is useless to refer to the multiplicity of decisions in this State, firmly holding to such principles of construction.

They are thoroughly established here, and such is the current of authority elsewhere. *Smith's Commentaries on Stat. and Cons. Construction,* and *Dwarris on Statutes,* have extracted the rules. In the exposition of a statute, the leading clue to the construction to be made, is the intention of the Legislature, to be collected from the words; but if they are not explicit, it is to be gathered from the occasion and necessity of the law, which moved the Legislature to enact it—one part of a statute must be so construed by another, that the whole may, if possible stand, *ut res magis valeat, quam pereat. Dwarris,* 42, 46.

The letter of a statute may be enlarged or restrained. *Dwarris,* 61.

Where words *per se,* are repugnant and absurd, what is necessary may be supplied by reasonable intendment and good construction. *Dwarris,* 42. If words, literally understood, have only a very absurd signification, it is necessary to deviate a little from their primary sense, and Blackstone admits, that if out of Acts of Parliament there arise collaterally any absurd consequences, manifestly contradictory to common sense, the Acts are, with regard to such collateral consequences void—such cases are excepted out of the statute by common sense, and the nonsensical words are said to be controlled by the common law. *Dwarris,* 80.

If a law be made, that whoever does a certain act, shall be adjudged a felon and suffer death, yet if a madman do this, he shall be excused—he is not within the spirit and reason of the law. *Dwarris,* 61.

The real intention too, when collected with certainty, will always, in statutes, prevail over the literal sense of terms. *Dwarris,* 40.

It is unreasonable to impute to the Legislature inconsistent intents upon the same general subject-matter—what it has clearly said in one part, must be the best evidence of what it has intended to say in the other, and if the clear language be in accordance with the plain policy and purview of the whole statute, there is the strongest reason for believing that the interpretation of a particular part, inconsistently with that, is a wrong interpretation. *Smith,* sec. 503.

A statute is not to be nullified because some of its provisions are absurd, repugnant or untrue. If enough remains, after rejecting the parts which were inappropriate, to show what was intended by the Legislature, that would suffice. *Smith, sec.* 506.

A statute ought, upon the whole, to be so construed that if it can be prevented, no clause, sentence or word should be superfluous, void or insufficient. *Dwarris on Stat.,* 21.

In applying the maxims of interpretation, the object is throughout, first, to ascertain, and next to carry into effect, the intentions of the framer. *Dwarris,* 46. The sense and spirit of an Act, its scope and intention, are primarily to be regarded in the construction of statutes; and it matters not that the terms used by the Legislature, in delivering its commands, are not the most apt to express its meaning, provided the object be plain and intelligible, and expressed with sufficient distinctness to enable the Judges *to collect it from any part of the Act. Dwarris,* 57.

According to these well settled canons of interpretation, and which seem to me to be reasonable, is the Act

now in question, incapable of legal defence, and to be pronounced an absolute nullity; or can its validity be supported?

Although the first section appears to be the basis of the entire frame-work of the statute, it is by no means a clear proposition, that if that were rejected as void and unmeaning, for its uncertainty, there would not be still ample provisions to meet all the requirements of the statute. The title and remaining sections, particularly the 12th, defining the duties of the assessors in the ascertainment of property liable to assessment under any law of the State by the 19th section, would enable them to distinguish the taxable and the exempted property; the only difference between the property exempted under this Act and the revenue law, ch. 483, is, that the latter exempts all mortgages, and this law merely mortgages on real estate, which, however, may be found to add very materially to the revenue of the State.

But what is the true meaning to be attached to the 10th section, notwithstanding its omissions? and are they not virtually supplied?

The majority of the Court have considered the language of this section imperative; that the property therein enumerated and excepted is liable to valuation and assessment, and all the other property not specified is exempted, by making the words of the section, "shall be exempt from taxation for State or local purposes," applicable to the property not specified in the first clause of the section. If such were the palpable conclusion to be drawn from the words of the section, considering all its provisions and clauses, it might be a debatable question whether, in the face of unquestionable language to that effect, the Courts could by any construction contravene such direct terms, taking into consideration the title and other sections, and its whole scope and purview, there might still be some doubt, even under such circumstances, as to the correct-

ness of such interpretation. In the event, however, that the law was declared to be invalid, the ground of such invalidity must necessarily be because of its utter absurdity, and not because the Legislature had not the power to pass such a law. Under such circumstances, it would not be presumed the Legislature intended to pass such a law, but that the enactment resulted from surprise and haste, and without design.

But, according to my apprehension, the words of the 1st section, upon a fair and legitimate interpretation, admit of no such plain and explicit meaning. On the contrary, it is much more apparent that the ambiguity has grown out of the omission of the words, "shall be liable to assessment and tax," immediately to follow the words of the first clause of the first section, "that all property, &c., whatever, in the State," and immediately before the following words, "except, &c.," or to be placed at the conclusion of the whole section.

Their insertion in either place would render the section free from ambiguity. .

That the words, "shall be exempt from taxation for State or local purposes," fairly apply to the subjects immediately preceding, is manifest from the proviso which follows, beside reference to the 4th sec. of the 81st Art. of the Code.

To enable us to understand and interpret the purport of not only the 1st section, but the entire statute, we have its title—its various sections, reaching to the number of 36— its scope and purview ; and we are required by its 19th section to refer to all the existing legislation of the State to give it aid, force and effect.

First, as to the title of the law, we must take judicial cognizance of the constitutional requirement, the 29th sec. of Art. 3 of the Constitution, which makes it obligatory upon the Legislature to describe the subject of the law by the title thereof.

This is declared by the Act to be "to provide for the general valuation and assessment of property in this State."

Without this requirement, by the rules of construction of statutes, where the meaning of the Act is doubtful, the title may be relied upon as an assistance in arriving at a conclusion, and to remove an ambiguity. *Sedgwick on Statutes*, 50, 57, 58.

In the case of the *Mayor of Annapolis vs. State*, 30 *Md.*, 112, reference is made to the title of an Act in question as to its purpose and object.

It would be a fair inference, from the avowal in the title, of its purpose, that if any property was excepted from its operation, it was a minor part compared with the mass of property in the State to be valued and assessed, and not that the great bulk was to be exempted, and the tax imposed upon a trifling amount.

The fair presumption ought to be that the title of the Act asserts a truth, in its declaration of the purpose to provide for a general valuation and assessment of the property in the State; whereas the construction contended for involves an absolute denial of the truth of such declaration, and, on the contrary, maintains that the Act has for its purpose no such object as asserted, but the general exemption of the property from valuation and taxation, except an inconsiderable portion. The exception becomes the rule. Such construction is utterly inconsistent, according to my apprehension, with the title of the Act, which according to that object ought to have been "an Act to provide for the general exemption of the property in the State from valuation and taxation." It is to presume the Act to be an absurdity.

Assuming the title to contain a truthful statement of the purpose of the Act, and to be declaratory of the preperty to be valued for taxation, what is the meaning to be attached to the 1st section?

In construing the section much importance is to be attached; indeed, the first thing to be considered, is the proviso in the last clause.

It was held by all the barons of the Exchequer, and such we understand to be the settled rule of construction, that where the proviso is repugnant to the main body of the Act, it shall stand and be held a repeal of the purview, as it indicates the last intention of the Legislature. *Sedgwick on Stat.*, 62; *Smith on Stat.*, sec. 578.

The proviso here not being repugnant to the purview of the 1st section, but harmonizing with its fair construction, enables us to determine its import.

If the proviso embodies a definite meaning, *per se*, involving no contradiction between itself and its adjuncts, then that must govern and control the construction of the section, so far at least as it affords reasonable explanation. *Sedgwick on Stat.*, 246.

We cannot harmonize with the section, except all the property of the State, according to the title of the Act, is subjected to valuation and taxation, with the exceptions enumerated in the classes, antecedent to the property to which the proviso immediately applies.

The latter clause of the proviso, making all the other property of such institutions liable to assessment and taxation, as other property in the hands of individuals or other corporations, would be absurd and unmeaning, without the section is construed to embrace property liable to assessment and valuation.

By the construction imputed by the title, and the description, "all property, real, personal and mixed, &c., being liable to valuation and taxation," the proviso has its true meaning; is sensible and consistent with itself and the other portions of the subject.

The 19th section refers us to all of the existing laws of the State, to enable us to understand its object and scope. Without this provision, according to Lord MANSFIELD, all

Acts in *pari materia* are to be taken together, as if they were one law. *Smith on Stat.*, 636.

In Kentucky, (14 *B. Monroe*, 266.; *Sedgwick on Stat.* 249,) it was held that where two statutes of the same date relate to the same thing, but one is more comprehensive than the other, there will be an effort to give to one some operation not embraced in the other, so that each may, if possible, have some effect,—that the legislation may not appear to have been vain and useless.

The 19th section of the statute, demanding aid, in its construction, from any existing laws, we must refer to the Code, Art. 81, and its amendment at the same session, by ch. 483 of Acts of 1874, and we may refer to the Assessment law of 1852, ch. 337, and 1866, ch. 157, and its supplement, 1867, ch. 341.

If the law in which there is some difficulty, have any relation to other laws which may help to clear up their sense, we must prefer, to all other interpretations, that which they may have from other laws. *Smith's Comm.*, sec. 470.

Chancellor Kent says that it is to be inferred that a code of statutes relating to one subject, was governed by one spirit and policy, and intended to be harmonious and consistent.

In the absence of provisions to the contrary, such would be the manifest rule, but here they are specifically called for.

Statutes enacted at the same session of the Legislature are to be taken in *pari materia*, and should receive a construction which will give effect to each, if possible. *The State vs. Rackley*, 2 *Black.*, 299.

Statutes dictated by the same policy, and having in view the attainment of the same ends, and relating to the same subject-matter, may both be considered together and construed as one statute. *Smith's Comm.*, sec. 642.

If any section be intricate, obscure or doubtful, the proper mode of discovering its true meaning, is by combining

it with the other sections, and finding out the sense of one clause by the words or obvious intent of another. *Ibid.*, *sec.* 503.

Such construction should be made, if possible, as will avoid any contradiction or inconsistency, and give some effect to every part of it. It is the duty of Courts, as far as practicable, to reconcile the different provisions so as to make the whole Act consistent. If this is impossible, then we are to give effect to what was manifestly the intention of the Legislature, though by so doing we may restrict the meaning or application of general words. *Sedgwick on Stat.*, 238.

In *Preston vs. Browder,* 1 *Wheaton,* 115, the Supreme Court of the United States, in construing a statute of North Carolina, had recourse to the history and institutions of the State, and treaties made with the Indians, in order to ascertain the intention of the Legislature in the passage of the Act, and decided that it did not embrace the land in question, though the words of it were sufficiently broad, on the ground that it did not appear to have been the intention of the Legislature.

The 6th section of the law makes it the duty of the Comptroller to prepare all necessary blanks and forms, and to make such rules and regulations for the assessment of the property of the State as will assure a correct and uniform assessment. The 34th section declares such regulations, &c., shall have the same effect as if by the Act enacted. The regulations adopted by the Comptroller, in pursuance of the 6th section, would have been obligatory, without that section ; and if they were unauthorized, that could not have the effect to invalidate the law.

In statutes, incidents are always supplied by intendment. Whenever a power is given by a statute, everything necessary to the making it effective is conferred by implication.

Because the 34th section was totally unnecessary, as the Comptroller would have possessed, by the 6th section, the

power to accomplish the duty imposed upon him without the 34th section, certainly no one would, for a moment, think of avoiding the whole law on such account.

The same remark may be made as to the effect of the 5th section, providing for a Board of Control and Review for Baltimore County, who are to exercise all the powers delegated to the County Commissioners in the other counties, under the terms of the Act. It seems to have been the purpose of the section to substitute for the purposes of this law, a Board of Review for Baltimore County, in the place of the County Commissioners; and as they are thus defined, it may be inferred that although they are not always so specified when reference is made to the Commissioners of the County, that they are embraced; certainly so far as the performance of their civil duties and obligations are concerned. However this may be, it would be but an unjustifiable refinement upon the objections to the law, to hold that such provision was sufficient to destroy the effect of the whole law. Such provisions are within the discretion of the Legislature, and if the law may be found to have defects, it is the duty of the Legislature to make the necessary amendment and correction, and most assuredly not the prerogative of the Court to undertake to legislate upon the subject. In many particulars, like its predecessor, the Act of 1866, ch. 159, it might require and receive much improvement.

But the Legislature is relieved from any trouble on that score, by the judgment of this Court, annulling *in toto* the whole law.

Entertaining these views of the legislation in question, I cannot concur in the conclusions of a majority of my brethren, but believe the judgment below should be affirmed.