# BALTIMORE CITY COURT

Filed November 8, 1901.

THE MAYOR AND CITY COUNCIL OF BALTIMORE

VS.

GEORGE M. UPSHUR, JOHN T. MORRIS AND EDWIN H. FOWLER, THE BOARD OF POLICE COMMISSIONERS OF BALTIMORE CITY.

*Olin Bryan* for petitioner.
*Alonzo L. Miles* for respondents.

STOCKBRIDGE, J.—

This is an application on the part of the city for a mandamus to require the defendants, George M. Upshur, John T. Morris and Edwin H. Fowler, as the Board of Police Commissioners of Baltimore City to furnish to the Board of Park Commissioners of the City of Baltimore, eighty-three men to render service all the year round, and six additional men to serve from May to October, for the preservation of order within the parks and squares of the City of Baltimore.

By their answer the defendants admit the demand made upon them and their refusal, but defend upon certain legal grounds, viz:

1. That there is no such person or corporation as the Board of Police Commissioners against whom the writ of mandamus can issue.

2. That they are by law invested with certain discretionary powers and that the granting of the writ would be in effect to control their exercise of such powers.

3. That the Mayor and City Council of Baltimore is not the proper party to seek to enforce any such demand.

4. That the statute under which the demand is claimed to be made is not mandatory upon the Board of Police Commissioners, or if mandatory is in conflict with the provisions of the City Charter, which vests certain discretionary power in the Police Commissioners, and for that reason not enforcible.

With regard to the first of these grounds it is curious to note that the answer which sets up this defence is signed, "Geo. M. Upshur, President Board of Police Coms." It is perfectly true that the Board of Police Commissioners is not a body corporate, and in certain senses is not liable to be sued, but that the members of it in their official character as a board can not be proceeded against by way of mandamus to compel them, as a Board to perform an official duty, is a proposition for which no authority is given, and one manifestly not maintainable. The petition sets out the names of the defendants as the persons on whom the demand was made, and by the order of the court passed on the petition, the rule was laid upon Messrs. Upshur, Morris and Fowler, the members of the Board, and they have answered. It seems plain from the face of the proceedings that this ground of defence is not well taken.

With regard to the third ground, it is sufficient to say that any one who is affected by a refusal upon the part of a public officer to perform his statutory duty is competent to apply to the courts to compel the performance. The proposition is self-evident that the corporation of the Mayor and City Council of Baltimore is materially interested in and affected by the action of the Police Board upon this demand, and therefore, entitled to institute this proceeding. But in addition to that, the Park Board is but an agency through which the corporation of the city performs a portion of its functions. Any matter, therefore, which affects such Park Board affects the city, and the refusal of the Police Board was in effect a refusal of the demand of the city, and thus as a party entitled to a service on the part of the Police Board, the city has a plain standing to maintain this proceeding.

The second and fourth grounds of defense are interwoven with one another and are best considered together. The demand, the refusal of which was the occasion of this application, is claimed to have been based upon the provisions of Section 95 of the New Charter. This section is one of those classified under the provisions relating to Parks and Roads.

"The Board of Police Commissioners of Baltimore City is *directed,* at the request of the Board of Park Commissioners, to detail from time to time such of the regular police force of said city as the said Board of Park Commissioners may deem necessary for the preservation of order within said parks and squares, * * * which policemen shall be under the direction of said Board of Park Commissioners, &c."

That by the use of the word "directed" the provisions of the section are made mandatory there can be little doubt. It was expressly so decided in—

Mayor and City Coun. vs. Reitz, 50 Md. 574.

But if a doubt was possible, that is removed by an examination of the provisions of Sec. 758 of the Charter, one of the sections prescribing the powers and duties of the Board of Police Commissioners. That section reads:

"The said Board of Police Commissioners are *required* on the requisition of the Board of Park Commissioners to detail from time to time such number of the regular police force of said city as the said Board may deem necessary for the preservation of order within any parks under their control, which detailed force shall have the same power in the premises that the police force of the city have as conservators of the peace."

It is apparent that the provisions of these two sections are identical in effect, and that which is by the one "directed" to be done, is "required" to be done by the other. If these two do not create a mandatory statute it is difficult to conceive what words in the language would.

The defendant relies on Section 745 of the Charter as conferring upon them certain discretionary powers with which Sections 95 and 758 conflict, and that since they are given thus a discretion, the writ of mandamus cannot be invoked.

It is true that by Section 745 certain discretionary powers are conferred upon the Board of Police Commissioners, but those have to do with the number of men to be enrolled in the case of an emergency, or with the formulation and enforcement of regulations for the administration of the department, and these in no manner conflict with the mandatory provisions of the Charter embodied in Sections 95 and 758. And even if there was a far greater apparent conflict it could not operate to nullify the mandatory provisions.

A case very close in its analogy in this regard was that of Revell vs. Annapolis, 81 Md. 1. By the Charter of the City of Annapolis, the Mayor, &c., of the city was authorized to issue bonds for the erection of school houses, provided the loan was approved by a popular vote of the citizens. This vested in the voters of Annapolis a clear discretion to authorize or refuse the creation of a loan by the issue of bonds for such a purpose. The Legislature of 1894, by Chapter 640, authorized and directed the County Commissioners of Anne Arundel County to borrow a certain sum for the building of school houses and further "directed" that the City of Annapolis should issue its bonds for the sum of $10,000 for the same purpose. This the officials of the city refused to do as it had not been approved by the voters of the city. Mr. Revell thereupon applied for a mandamus to compel the issue, and in a very carefully prepared opinion the Court of Appeals held that the statute was mandatory, and that although the act under consideration made no provision for the submission of the question to the people, and was thus in derogation of the City Charter; that the Legislature having acted within the scope of their powers the mandamus must issue.

But it is further urged on behalf of the defendants, that in the construction of a statute the legislative intent must govern, and that is undoubtedly true if there is any uncertainty as to the meaning of the statute, but if, as in this case the language employed in the statute is clear and precise and unambiguous, the legislative body must always be understood to mean what it has plainly expressed.

Maxwell vs. State, 40 Md. 292.

What has been said must be controlling in this case, yet inasmuch as the growth of this legislation was referred to in the argument, a brief review of it is not without profit. The first Act of the Legislature which attempted to deal with the subject was the Act of 1862, Ch. 27, which was an Act to ratify the purchase and provide for the organization and government of Druid Hill and Patterson Parks, by the addition of certain sections to the Local Code. By Section 957 of this Act, the Board of Police Commissioners were *authorized*, on the requisition of the Board of Park Commissioners, to detail policemen for service in the parks. By its terms the operation of the Act was discretionary with the Police Board.

Then followed the Act of 1867, Ch. 367, which to a large extent provided for a reorganization of the police force of the city, and added several new sections to the law, among which was Section 823, which "required" the Police Board on the requisition of the Druid Hill Park Commissioners to detail officers for service therein as the said Board (Park Commissioners) should deem necessary. By the very act, therefore, by which the Police Board was reorganized, a mandatory provision was inserted so far as Druid Hill Park was concerned. These acts of 1862 and 1867 were both codified in the Local Code of 1888, as Sections 709 and 739, respectively, both dealing in part at least with the same subject matter, the one discretionary, the other mandatory in its language.

The Act of 1867, which became Sec. 739 of the Code of 1888 is the same as Sec. 758 of the present Charter of the City, except that its original application to Druid Hill Park is now extended to all the parks, and the Act of 1862, Sec. 709 of the Code of 1888 is substantially Sec. 95 of the Charter with the word "authorized" changed to "directed," making the provision as it occurs in the grouping relating to parks co-incide with the same provisions as classified under police powers and duties.

Since then there has been a mandatory provision of this nature affecting the Board of Police Commissioners in force since the passage of the Act of 1867, the act which vested them with most of their powers, it will not do to say now that the legislative intent in the adoption of the present City Charter was any other or different than the plain terms of the statute import.

In accordance with these views, a peremptory order of mandamus will be signed.