# BUCHANAN SCHLEY, STATE TAX COMMISSIONER vs. BLAIR LEE, ET AL.

*Taxation of Baltimore City Stock Owned by Banks and other Corporations—Valuation of Shares of Stock by State Tax Commissioner—Bill by Taxpayer to Enjoin Unlawful Assessment of Property of Corporation—Parties.*

Under Code, Art. 81, secs. 148 and 149, the State Tax Commisstoner, in order to ascertain the valuation for purposes of taxation of the shares of stock of banks and other corporations, deducts the assessed value of the real estate owned by the corporation from the aggregate value of all the shares, then divides the remainder by the number of shares of stock and the quotient is the taxable value of each share. The State tax on all shares is paid by the corporation for the stockholders, and the Tax Commissioner certifies to the Appeal Tax Court of Baltmore and to the County Commissioners of each county, where any of the shareholders reside, the taxable value of the shares as thus ascertained. County and municipal taxes on shares owned by residents are collected by the local authorities from the corporation, which pays the same for the shareholders, and if the shares are owned by non-residents, they are taxed in the county or city in which the corporation is situated. Taxes on the real estate of a corporation are paid by it as taxes on other real estate are paid. Under this system, the assessment of the shares by the Tax Commissioner is the basis both for State and local taxation. Section 160 provides that any corporation with shares which owns any of the public debt of the State, upon which the State tax has been deducted, or of the debt of the city of Baltimore on which State taxes are payable by the city, may report the same to the Tax Commissioner, and the amount of such debts upon which taxes are so payable, shall be allowed as a credit in settlement of the taxes on the shares of stock of such corporation, and any corporation not havmg capital stock and owning any such such debt of the State or Baltimore City, is entitled to the same credit therefor. Under the laws of the United States, Baltimore City stock and other securities, while held by national banks, are protected from State taxation. *Held*, that sec. 160 does not expressly direct the Tax Commissioner to deduct the value of Baltimore City stock held by a bank in making the assessment of its shares, and if he did so it would be an exemption of the shares from taxation for county and municipal purposes to the extent of the city stock owned by it, and that such deduction should not be made.

*Held*, further, that in the case of Baltimore City stock, held by corporations other than national banks, no deduction of the value thereof shall

be made from the assessment of the corporation, because no provision is otherwise made for the payment of county and municipal taxes on such property, and if deducted from the assessment of the property of the corporation, there would be a violation of the rule of uniformity and equality of taxation prescribed by Art. 15 of the Declaration of Rights, since city stock would be exempt from taxation when owned by a corporation and liable to taxation when owned by an individual.

A tax payer of a county is entitled to maintain a bill to enjoin the Tax Commissioner from making an illegal assessment of the shares of stock of a corporation in that county, when the proposed assessment would result in the reduction of the basis of taxation for county purposes, and there is no direct appeal from the action of the Tax Commissioner.

In a bill by a tax payer to enjoin the Tax Commissioner from making an unlawful assessment of the property of two national banks and an insurance company, the corporations are not necessary parties to the proceedings, but they should be made defendants upon the remand of the case to the lower Court.

*Decided June 25th, 1907.*

Appeal from the Circuit Court for Anne Arundel County (REVELL, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*William S. Bryan, Jr.*, Attorney General, for the appellant.

*Blair Lee* and *George H. Lamar* (with whom was *A. T. Brady* on the brief) for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal and the following one of the present appellant *vs.* the County Commissioners of Montgomery County, No. 40 of the present docket, were heard together. The cases in which the two appeals were taken were instituted at the same time, on the equity side of the Circuit Court for Anne Arundel County, for the same purpose and the two records present the same state of pleadings. The only practical difference between the cases is that the present one was instituted by the appellant, Blair Lee, on behalf of himself and the other tax-

payers of Montgomery County, and No. 40 was instituted by the County Commissioners of Montgomery County.

The common purpose of the two suits was to have the appellant as State Tax Commissioner restrained from making the assessment for the year 1907 under sec. 159 of Art. 81 of the Code, of the shares of stock of two national banks and the assets of one fire insurance company, in the method which he has heretofore pursued and which he declares it to be his purpose to continue to pursue and to require him to make the assessments in the manner alleged by the bills to be the correct one. The bills of complaint allege his methods to be erroneous and unlawful both in ascertaining the value of the shares of the banks and of the assets of the insurance company and also in making certain deductions therefrom in arriving at their final or assessment valuations. We will consider in this opinion the legality of the deductions which the appellant as Tax Commissioner proposes to make from the value of the shares of stock of the banks and the assets of the insurance company, and will reserve for the opinion in the County Commissioners case the question of his proposed method of ascertaining the respective values from which to make the deductions.

Upon the filing the respective bills with their exhibits the Court below passed in each case an order for a preliminary injunction in accordance with the first and second prayers of the bill. The defendant having first demurred to the bill appealed from the order.

The bill in this case alleges that the plaintiff is a citizen of this State and a resident and taxpayer in Mongomery County and that the defendant is the State Tax Commissioner having his office at Annapolis in Anne Arundel County, and that the three corporations hereinafter mentioned have their principal places of business in Montgomery County. The substance of the further averments of the bill is as follows:

That shares of the capital stock of the Montgomery County National Bank and the First National Bank of Gaithersburg owned by residents of Montgomery County and by non-residents of this State constitute property taxable in said county,

as do also the property and assets of the Mutual Fire Insurance Company of Montgomery County which has no capital stock divided into shares. The Montgomery Co. National Bank owns real estate assessed for taxation at $30,000, and also $118,200 of the stock or funded debt of Baltimore City on which that city has agreed to pay the State taxes, and the First National Bank of Gaithersburg owns real estate assessed for taxation at $3,200 and also $10,000 of Baltimore City stock of the character aforesaid, and that certain of the stockholders of each of said banks reside in Montgomery County and others are non-residents of this State. The said Fire Insurance Company owns $96,500 of the same character of Baltimore City stock and also $13,000 of Montgomery County bonds exempt from county and municipal taxation, but subject to taxation for State purposes.

The bill further avers that the appellant admits that he, as State Tax Commissioner, is required by law to return to the County Commissioners for county and municipal taxation the identical assessment of the stock of the said corporations that he returns to the State Comptroller for State taxation, and he has informed the appellee that he intends, in making said assessment for the year 1907, to deduct, from the value of the capital stock of each of the said two banks, not only the assessed value of the real estate held by it but also the face value of the Baltimore City stock owned by it, and to deduct from the property and assets of the said Fire Insurance Company the face value of its Baltimore City stock and also of its Montgomery County bonds. That the assessment which the Tax Commissioner has thus announced his purpose to make will be unlawful and contrary to the duty imposed upon him by the existing law of this State which requires him to ascertain the assessable value of the shares of capital stock of said banks, by deducting only the assessed value af the real estate held by each of them from the aggregate true value of all of the shares of its capital stock and dividing the remainder by the number of the shares, and provides that the quotient thus obtained shall be the taxable value of each share of the stock

for State, county and municipal taxation. That the law also requires him to ascertain the assessable value of the property and assets of said Fire Insurance Company by deducting from their true value only the assessed value of the real estate, if any, owned by it. That the appellant has construed and persists in construing sec. 160, of Art. 81 of the Code, which relates only to credits to be allowed to corporations in the "Settlement of taxes," as forming part of the law relating to the assessment by the Tax Commissioner of the shares of their capital stock for the purpose of taxation; and that his plan of assessing the shares in question results in the practical exemption of the shares of stock of such corporations, to the extent of the value of said Baltimore City stock from all taxation for county and municipal purposes, as the County Commissioners are required by law to accept his assessment of the said shares for purposes of such taxation. That under the laws of the United States the said Baltimore City stock while held by the said national banks are not subject to assessment or taxation for State, county or municipal purposes, that no State tax has in fact been paid thereon and that therefore such stocks so held cannot be lawfully regarded as tax paying investments or used as credits in the settlement of State, county or municipal taxes. The bill insists that it is therefore beyond the power of the Tax Commissioner to assess the shares of capital stock of the said corporations in the manner proposed by him. With the bill were filed, as exhibits, copies of letters which passed between the plaintiff and the Tax Commissioner, prior to the institution of this suit on the subject of the assessment of the shares of the corporation, about to be made by the commissioner.

The bill then further alleges that the proposed action by the Tax Commissioner will, if not prevented, be in violation of the laws of the State and will inflict serious injury upon the plaintiff and the other taxpayers of Montgomery County and that, as the law allows them no appeal from the assessment which will be made in the manner aforesaid unless prevented by the order of this Court, they are without remedy at law to prevent the wrongs complained of.

The prayer of the bill is for first a preliminary injunction and in due course a final one preventing the Tax Commissioner from making the assessment in the manner intended by him, and that he may be required to make the assessment and return of the shares of stock of the said corporation without deducting from his valuations thereof the value of the Baltimore City stock held by them, and so that the $13,000 of Montgomery County bonds be assessed against the insurance company for State purposes only, and for general relief.

The demurrer filed to the bill by the appellee, as Tax Commissioner, assigns for its ground, in addition to the general want of equity in the bill, 1st the want of jurisdiction in the Court to control the defendant in the exercise of the official discretion conferred on him by law, and 2ndly, the fact that the corporations, mentioned in the bill, whose interests are attempted to be affected by the suit have not been made parties to it. We will now consider the several grounds of demurrer.

The statute law immediately affecting the question presented by the record is mainly found in secs. 148, 159, 160 and 162 of Art. 81 of the Code of 1904.

Sec. 148 requires the State Tax Commissioner, before the 15th of May in each year, to assess for State purposes the shares of capital stock of all banks, State or National, banking associations or other incorporated institutions or companies incorporated by or located and doing business in this State whose shares are liable to assessment and taxation, and to report the amount of the basis of the assessment for State purposes, and makes the assessment subject to appeal as provided in sec. 162 by the corporation whose shares have been assessed.

Sec. 162 requires the Tax Commissioner to certify and return, his assessment of the shares of stock and banks and other corporations as soon as made, to the Comptroller who is required to at once notify the president or other proper officer of the corporations of the assessment by transmitting to him an account of the State taxes due by his corporation under the valuation. The right of appeal to the Comptroller and State Treasurer from such valuation is then given to the corporation

for thirty days, after which in the absence of an appeal the assessment becomes final.

Sec. 159 prescribes the method in which the Tax Commissioner is to make his annual valuation and assessment of the shares of stock of corporations for State purposes and introduces the further provision that such assessment shall also furnish the valuation at which such shares of stock shall be taxed for county and municipal purposes. After directing the president or other proper officer of every corporation, created by or doing business in this State, to procure the assessment, by the County Commissioners or Appeal Tax Court, of any real estate owned by it and to furnish a copy of the assessment to the Tax Commissioner, it further says, "The respective taxable value of the shares of stock in such bank, corporation and joint stock companies shall be ascertained by the State Tax Commissioner in the manner following. He shall deduct the assessed value of such real property belonging to the said respective banks, corporations or joint stock companies from the aggregate value of all shares of such respective banks, corporations or joint stock companies and divide the remainder by the number of shares of the capital stock or shares of such respective banks, corporations or joint stock companies and the quotient shall be the taxable value of each of such respective shares for State purposes, and all State taxes thereon shall be paid as provided now or hereafter by law, and when the valuation and assessment of the shares of the capital stock or shares of such banks, corporations or joint stock companies shall have been finally determined or made for State purposes, the State Tax Commissioner shall certify to the County Commissioners of each county where any of the stockholders or shareholders may reside and to the Appeal Tax Court of Baltimore City, if any of said stockholders or shareholders reside in said city, and to the County Commissioners of the county in which such bank, corporation or joint stock company is situated or to the Appeal Tax Court of Baltimore City, if it is situated in said city, the assessed taxable value of such respective shares of stocks or shares so ascertained as aforesaid. And the said

taxable value of such respective shares of stock or shares in such banks, corporations or joint stock companies owned by residents of this State and taxable within this State shall, for county and municipal purposes, be valued to the owner thereof in the county or city in this State in which such owners shall respectively reside and the said taxable value of such of said stock or shares as are held by non-residents of this State shall, for county and municipal purposes, be valued to the owners thereof in the county or city in which said bank, corporation or joint stock company is situated." Sec. 159 further provides that all county and municipal taxes assessed on the taxable value of the shares of stock in said corporations shall be collected from the corporation; and sec. 150 provides that the State taxes thereon shall be paid to the State Treasurer by the corporation for the shareholders. Sec. 159 also provides that the State, county and city taxes on the assessed value of the real estate, thus deducted in assessing the shares of stock, shall be paid by the corporation owning it as the taxes on other real estate are paid.

These provisions of the Code provide a simple and effective system, for the assessment and collection of both State and local taxes upon the shares of stock of corporations created by or doing business in this State, and if they were the only provisions applicable to the subject the practical operation of the system would cause neither difficulty nor embarrassment. It is to be observed that under this system the powers and duties of the State Tax Commissioner relate exclusively to making and returning the assessment of the shares of stock and that he is to make but one assessment and is required to certify that to the Comptroller for purposes of State taxation and to the County Commissioners and Appeal Tax Court for purposes of local taxation. As the State and local taxes on the real estate owned by the corporations are required by law to be paid by them in the same manner that other persons pay the taxes on their real estate, it becomes necessary to deduct the value of the corporation's real estate in assessing the aggregate value of its shares of stock in order to prevent double

taxation. Under this system the one valuation and assessment of the shares of stock by the Tax Commissioner forms an equally just basis for both State and local taxation.

The disturbing element is introduced into the system by sec. 160, which makes provision for the taxation for State purposes of the stock of corporations holding, as investments of their capital, any State or Baltimore City stock, or the shares of any other corporation on which the payment of the State tax is otherwise provided for. The essential portion of that section, as amended by the Act of 1906, ch. 467, is as follows:

"160. Any corporation having a capital stock divided into shares, and owning as an investment of part of its capital any of the stock debt of this State, upon which the State tax has been deducted by the Treasurer, or of the stock debt of the city of Baltimore on which the State taxes have been paid or are payable by said city, or shares in any bank, or other corporation of this State upon which the State and county or city taxes are levied and paid, or are payable by such bank or other corporation, may report the same in detail under the oath of the president, cashier, treasurer or other proper officer, to the State Tax Commissioner, and the amount of such stock debt or debts, or the assessed value of such capital stock so owned, and upon which such taxes are paid or payable as aforesaid, shall be allowed as a credit, in the settlement of the taxes, on the shares of capital stock of such corporation so owning the same; and any corporation not having capital stock divided into shares, and owning as an investment of part of its assets any of the stock debt of this State upon which the State tax has been deducted by the Treasurer, or of the stock debt of the city of Baltimore on which the State taxes have been paid or are payable by said city, or shares of the capital stock of any bank or other corporation of this State, upon which the State and county or city taxes are levied and paid, or are payable by such bank or other corporation, may report the same in detail, under the oath of its president, cashier, treasurer or other proper officer, to the State Tax Commissioner, and the amount of such stock, debt, or debts, or the assessed value of

such shares of capital stock so owned, and upon which such taxes have been paid or are payable as aforesaid, shall be allowed as a credit in the settlement of the taxes on the assets of such corporation so owning the same; but no credit shall be allowed to any such corporation by reason of any investments on which the taxes are not paid or payable as aforesaid."

While sec. 160 thus provides that any corporation holding, as an investment of part of its capital or assets, stock of the character therein described, on which provision has been otherwise made for the payment of the State tax, may report it in detail under oath to the State Tax Commissioner and that the assessed value of it "shall be allowed as a credit in the settlement of the taxes" on the shares of the corporation owning it, it does not say how or by whom the "credit" is to be allowed, nor does it in terms authorize or direct the Tax Commissioner to deduct the value of such stock in assessing the shares of the corporation owning it. The commissioner, however, construes this section as in effect directing him to make such deduction in his annual assessment of the shares of corporations, and he asserts in his letter to the appellees, filed as an exhibit with the bill, that such has been the practice of his office.

This brings us to the important question, what was the intention of the Legislature in enacting sec. 160? Did it intend by directing the sworn statement in detail of the stock, for which the corporation was to have credit in the settlement of its taxes, to be made to the Tax Commissioner, to give to that official authority to allow such credit in making the annual assessment of the corporate shares under the provisions of sec. 159? The appellant contends that such was the obvious intention of the Legislature because it did not require the report by the corporation of its ownership of the investments mentioned in sec. 160 to be made to any other official than the Tax Commissioner or require him to transmit the report or any information of its contents to any other person. He further insists that this legislative intent becomes more plainly apparent from an inspection of the Journal of the Senate,

which passed that section, upon whose pages appear the record of certain proceedings strongly tending to support his contention.

We would feel at liberty, upon the authority of *James* v. *The State*, 63 Md. 256, and *Trinity Church* v. *The United States*, 143 U. S. 464, and other similar decisions, to resort to an inspection of the proceedings of the Legislature, in an ordinary case, for aid in ascertaining its intention in passing an Act as doubtful in its terms as some of the provisions of sec. 160 are. But we are now dealing with a subject in reference to which it has been held by a long line of decisions that the legislative intent in order to be effective must be expressed "in the clearest and most unambiguous language." Under the laws of the United States, Baltimore City stock and other securities while held by national banks are protected from taxation for any purpose by the States. At the same time the shares of stock in national banks are liable to be taxed to their owners by the State for both State and local purposes. *Owensboro Nat. Bank* v. *Owensboro*, 173 U. S. 664. If under these circumstances the Tax Commissioner were to deduct the Baltimore City stock owned by a national bank, which while so owned had made no contribution to the funds raised by taxation, from the value of the shares of the bank in assessing them for taxation the practical operation of his act would be an exemption from taxation of the shares of the bank to the extent of the amount of city stock held by it. "The taxing power is so essential to the existence of government that it is never presumed to be relinquished unless the intent to relinquish is expressed in plain terms or in the words of the Supreme Court 'in the clearest and most unambiguous language' and the ascertainment of the intent cannot be left to inference or implication. Every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation." *Balto., Ches. & Atl. Ry. Co.* v. *Wicomico County*, 103 Md. 285, and many cases there cited. There being no express direction in sec. 160 to the Tax Commis-

sioner to deduct the value of Baltimore City stock held by corporations in making the annual assessment of corporate shares required by sec. 159, we are not at liberty to imply such a direction when the corporation is a national bank as the effect of that deduction would be to cause the practical exemption from taxation to which we have referred.

Turning now to the case of Baltimore City stock held by corporations other than national banks, and assuming for the sake of the argument that the Legislature intended by section 160 to require the Tax Commissioner in such cases to deduct the Baltimore City stock from the value of the corporate shares in assessing for taxation, we are confronted with the question of the power of the Legislature to authorize such a deduction.

Under the system of taxing the property of corporations in force in this State the investments held by them, exclusive of real estate, are not directly taxed, but the contribution of those investments to the funds raised by taxation is made through the taxes levied on the capital stock of the corporation owning them. We decided in *Clark Distilling Co.* v. *Cumberland*, 95 Md. 471, that the annual assessment of the shares of the capital stock of corporations, required by law to be made by the Tax Commissioner, constitutes the only valuation on which taxes can be levied on them for the State, county or municipal purposes. Any investments therefore, exclusive of real estate, held by a corporation which are deducted from the aggregate value of the shares of its capital stock, by the Tax Commissioner in making his annual assessment, practically escape taxation unless some other provision has been made by law for the payment of taxes thereon. The law does make provision for the payment of *State Taxes* on Baltimore City stock, in secs. 104 to 108 of Art. 81, by requiring the City Register to pay them over directly to the State Comptroller, but it nowhere makes provision for the payment of *county or municipal taxes* on that stock.

Applying these propositions to the Baltimore City stock held by the fire insurance company mentioned in the bill, which has

no capital stock, as an investment of part of its assets, what do we find? If the Tax Commissioner be permitted in making his assessment of the assets of the insurance company, to deduct from their aggregate value the city stock held by it amounting in all to $96,500, that stock will practically escape taxation for county and municipal purposes and Montgomery County will lose the revenue to which it would otherwise have been entitled from that source. The State would also in that event suffer a practical reduction of its taxable basis to the extent of the $13,000 of bonds of Montgomery County held by the insurance company which on the same principle would have to be deducted by the Commissioner in assessing its assets. A further, and from a legal standpoint more serious, result that would follow the adoption by the Tax Commissioner of his proposed plan of assessing this company's assets would be an unjust and unlawful discrimination between the liability of Baltimore City stock and like securities to taxation when held by a private person and their practical exemption from that liability when held by a corporation. Such result as that involves a violation of the basic principle of equality and uniformity of taxation, asserted by Article 15 of the Declaration of Rights. which cannot be viewed with the slightest degree of toleration by this Court. The power of the Legislature, when State policy and the public interest require it, to exempt within reasonable limits certain classes of property from taxation has been recognized by numerous decisions of this Court but it has always been held that the power cannot be so exercised as to destroy the equality prescribed by the fundamental law. *Wells* v. *Hyattsville*, 77 Md. 140; *Prince George's Co.* v. *Laurel*, 70 Md. 443; *Simpson* v. *Hopkins*, 82 Md. 448.

It was competent for the Legislature to provide, as it did in sec. 159, that in making the annual assessment of corporate shares the assessed value of the real estate held by a corporation should be deducted from the aggregate value of its shares because the taxation of the real estate for both State and local purposes is otherwise provided for. It would also have been competent for the Legislature to have directed the Tax Commissioner in

making the assessment to deduct the value of those of the investments mentioned in sec. 160 "upon which the State and county or city taxes are levied and paid or are payable" by other persons than the corporations whose shares are being assessed by him. Provisions of that character are free from objection as they simply operate to prevent double taxation and do not in their application result in unjust discrimination between different owners of the same species of property in liability to taxation. So long, however, as the law authorizes but the one annual assessment of corporate shares and makes that assessment the only basis of taxation of those shares for both State and county purposes, the Tax Commissioner in making the assessment can not deduct from the value of the shares the amount of any investment liable to taxation for either purpose unless its taxation for that purpose has been otherwise provided for.

We have no doubt of the right of the appellee to resort to equity for relief by injunction in the present case. It is apparent that if the Tax Commissioner be permitted to make the proposed assessment in accordance with his avowed purpose serious loss and injury would result to the taxpayers of Montgomery County through the consequent reduction of the basis of taxation for county purposes. From this unlawful assessment; if it should be made, the tax payer would have no appeal. The right of appeal to the Comptroller and Treasurer from the assessment is given to the corporation but of that right the taxpayer cannot avail himself. Under such circumstances the right of the taxpayer to relief in equity by injunction to restrain the proposed unlawful act of the public official has been repeatedly recognized by this Court. *Baltimore* v. *Gill*, 31 Md. 395; *Baltimore* v. *Radecke*, 49 Md. 231; *Mayor, &c.,* v. *Keyser*, 72 Md. 108; *St. Mary's Ind. School* v. *Brown*, 45 Md. 325; *Wells* v. *Hyattsville*, 77 Md. 142; *Peter* v. *Prettyman*, 62 Md. 571.

In *Mayor, &c.,* v. *Keyser, supra*, this Court said: "This is a bill to restrain the defendant officials from entering into a contract for lighting certain streets and public buildings in Balti-

more City with electric lights; and to restrain the city authorities from paying any money under said contract. It is filed by taxpayers of the city in their own behalf, and in behalf of all other taxpayers who may see fit to come in as parties. The injunction is asked on the ground that the defendants have no lawful power to make the contract in question and that the contract, if made, will impose upon the complainants an increased burden of taxation. Now, if this be so, if the contract is one which the defendants have no authority to make, and the contract, if made will increase the burden of taxation, then the injunction was properly granted. Since the decision in *Baltimore* v. *Gill*, 31 Md. 395, this can no longer be considered an open question. Whilst freely recognizing the general principle, that public wrongs are not to be redressed at the suit of individuals who have no other interest in the matter than the rest of the public, the Court in that case held, that where the city authorities undertake to make a contract without the lawful power to make it, and the contract, if made will increase the burden of taxation, taxpayers constitute a special class, having a special interest in the subject-matter distinct from that of the general public. In all such cases an injunction is, upon obvious principles, the most convenient and appropriate remedy."

The question at issue here is not merely one of the amount of the valuation or assessment, as it was in the cases of *Baltimore* v. *Bonaparte*, 93 Md. 156, and *Consolidated Gas Co.* v. *Baltimore*, 101 Md. 541, cited and relied on by the appellant. It is one not of the judgment but of the *power* of the Tax Commissioner and that question it is conceded in the cases of *Salisbury Assn.* v. *Wicomico County*, 86 Md. 621-2, and *United States* v. *Arendondo*, 6 Pet. 729, and others relied on by the appellant, is not settled or concluded by the decision made or the acts done by the tribunal or officer. Furthermore we held in *Baltimore* v. *The Canton Co.*, 63 Md. 237, that the Tax Commissioner in making the abatement, in his assessment of the corporate shares, from their aggregate value of the assessed value of the real estate is a ministerial officer only. With at

least equal propriety it should be said that he is only a ministerial officer in deducting, from the aggregate value of the shares, the Baltimore City stock and other corporate securities specified in sec. 160 of Art. 81.

The present suit is not defective in its present stage because the two banks and the insurance company, whose shares the Tax Commissioner proposes to assess in an unlawful manner, were not made parties to the proceeding. Under our system we have repeatedly held that the tax on the corporate share is in fact a tax on the shareholder and not on the corporation although the State has made the corporation its agent for the collection of the tax. In *Mayor, &c.*, v. *Keyser, supra*, the injunction was granted against the Mayor, Comptroller and Superintendent of Lamps from making a contract which they proposed to execute with the Brush Electric Light Co., yet that corporation was not made a party to the case, although it was in as true a sense interested in the result of the controversy as the two banks and the insurance company are interested in the conclusion reached in the present case. In *Lucas* v. *McBlair*, 12 G. & J. 1, the bill was filed against the Commissioners of Lotteries, who were public officers of annual appointment, for an injunction to restrain them from granting licenses for lotteries or sales of lottery tickets. A preliminary injunction was granted as prayed which was subsequently dissolved by CHANCELLOR BLAND upon the ground that the State should have been made a party to the suit as the result of it, if successful, would be to diminish the public revenues. Upon an appeal to this Court the order of the Chancellor was reversed the Court saying in its opinion: "It has been well remarked by an eminent author, in many cases, that the expression, that all persons interested in the subject must be parties to the suit, is not to be understood as extending to all persons who may be consequentially interested. * * * And this leads us in the next place to suggest, that Courts of equity do not require that all persons having an interest in the subject-matter should, under all circumstances, be before the Court as parties. On the contrary, there are cases in which certain

parties before the Court are entitled to be deemed the full representatives of all other persons.   *   *   *   The objection that the State ought to have been a party to the proceeding is of no avail at the present stage of the suit.   In other words, it is no ground upon which to claim a dissolution of the injunction.   If a necessary party to the cause which it is now not necessary to decide, that defect may be supplied at any time before the final hearing."   *Lucas* v. *McBlair*, has been cited and relied on in considering who are necessary parties to injunction suits in *Gregg* v. *Baltimore*, 14 Md. 494, and *Hoffman Coal Co.* v. *Cumb. Coal & I. Co.*, 16 Md. 482.

Inasmuch however as the present suit constitutes an effort on the part of one taxpayer to procure the regulation or control of the action of the Tax Commissioner in assessing the shares of three specified corporations, and not his entire assessment of corporate shares, we are of the opinion that those three corporations should be brought into the case as defendants when it goes back to the Circuit Court before any additional steps are taken therein.

For the reasons stated in this opinion the order appealed from will be affirmed and the case remanded for further proceedings in accordance with this opinion.

> *Order affirmed with costs and case remanded for further proceedings.*

BRISCOE, J., dissented.