## COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY v. BUCH

[No. 142, October Term, 1947.]

*Decided April 23, 1948.*

396

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Benjamin Michaelson* for the appellants.

*H. Vernon Eney* and *Philemon B. Coulter,* with whom
were *Armstrong, Machen & Eney* on the brief, for the
appellee.

Submitted on brief, *amicus curiae,* by *Hall Hammond,
Attorney General,* and *Richard W. Case, Assistant
Attorney General,* for the State Tax Commission.

HENDERSON, J., delivered the opinion of the Court.

Justin G. Buch, a taxpayer and resident of Anne
Arundel County, and president of the Citizens Protective
Association of Anne Arundel County, Incorporated, filed
a petition with the County Commissioners on July 21,
1947, demanding a hearing by that body in regard to "the
inequitable, unjust and undervalue assessments" of 47
parcels of real estate and improvements in Anne Arundel
County, particularly described in the petition, owned by
taxpayers other than the petitioner. On August 14, 1947,
the Commissioners wrote counsel for the petitioner: "In
view of the fact that all property in Anne Arundel
County has been assessed or is now being assessed as
provided by statute, under the supervision of the State
Tax Commission, the petition for a hearing is out of
order and cannot be used as a basis for a hearing on
assessments." On September 15, Buch filed a petition in
the Circuit Court for Anne Arundel County for a writ
of mandamus requiring the Board to grant him a hear-
ing. The Commissioners filed a demurrer and answer;
the petitioner demurred to the answer. The appeal is
from an order of the Court sustaining the petitioner's

demurrer and directing the writ to issue as prayed. The State Tax Commission did not intervene in the proceeding below, as authorized by Section 175 (13) of Art. 81 of the Code, but a brief was filed here on its behalf by the Attorney General as *amicus curiae.*

The appellant contends (1) that the granting of a hearing is wholly discretionary with the County Commissioners, and not subject to judicial review, and (2) that in any event the remedy for a refusal of a hearing is by way of appeal to the State Tax Commission, and not by resort to mandamus. The brief filed by the Attorney General attacks the order on the broader ground that under the statute a taxpayer has no right to a hearing except in relation to the assessment of his own property. We shall discuss the latter contention first.

Sections 190 and 191 of Art. 81 of the Code provide:

"190. Any taxpayer, or city, or the Attorney General on behalf of the State, may demand a hearing before the County Commissioners or the Appeal Tax Court of Baltimore City or the assessing authorities of any other city as to the assessment of any property or any unit of tax value, or as to the increase or reduction or abatement of any such assessment, or as to the classification thereof, for the next ensuing year; and no formal proceedings shall be required. In case of any such hearing any party in interest may file data and information bearing thereon, without regard to the technical rules of evidence. Any such person or corporation so demanding a hearing may also in writing file information with the County Commissioners or the Appeal Tax Court of his address or the address of the agent or attorney to which any notices pertaining to said matter shall be sent, provided such agent or attorney representing such person or corporation has first filed with such County Commissioners or the Appeal Tax Court of Baltimore City or the assessing authorities of any other city his right or power of attorney to represent such person or corporation. If any such address shall be filed it shall be the duty of the

County Commissioners or the Appeal Tax Court to cause a statement of the order or action or refusal to act of such County Commissioners or Appeal Tax Court to be posted in the United States Mail, postage prepaid, to such address, and no action or refusal to act shall be operative as against the person giving such address until such statement shall be so mailed. No demand for a hearing shall be granted under this section unless filed in the counties before the date of finality for the taxable year in question or in Baltimore City before July first preceding the taxable year in question."

"191. Any taxpayer, any city, or the Attorney General on behalf of the State, or a supervisor of assessments as provided in Section 177 of this Article, claiming to be aggrieved because of any assessment or classification, or because of any increase, reduction, abatement, modification, change or alteration or failure or refusal to increase, reduce, abate, modify or change any assessment, or because of any classification or change in classification, or refusal or failure to make a change, by the County Commissioners, the Appeal Tax Court of Baltimore City or the assessing authorities of any other city, may by petition appeal to the State Tax Commission therefrom, and the State Tax Commission shall hear and determine all such appeals within sixty days from the entry thereof with said Commission. * * * No appeal on behalf of a taxpayer shall be allowed under this section from a failure or refusal to abate, reduce or reclassify an existing assessment unless application in writing for such action shall have been filed by the appellant with the assessing authority appealed from within the time limited for the filing of a demand for a hearing by Section 190 of this Article."

Upon its face, the language of Section 190 that "any taxpayer * * * may demand a hearing before the County Commissioners * * * as to the assessment of any property or any unit of tax value, or as to the increase or reduction or abatement of any such assessment", would appear

to be clear and unambiguous, and so sweeping as to forbid its limitation, by construction, to the assessment of property owned by the particular taxpayer demanding the hearing. It may also be observed that the express authorization of a hearing in the event of a reduction or abatement of assessment would seldom be availed of by a taxpayer so fortunate as to obtain that particular relief.

The Attorney General attempts to meet these difficulties by arguing that the provision for a hearing set out in Section 190 of the present Code was merely a paraphrase of Section 238 of Chapter 841 of the Acts of 1914, creating the State Tax Commission, codified along with other sections by Chapter 226 of the Acts of 1929. But we think that Section 238 was fully as broad as Section 190, in according to any taxpayer a right to "demand a hearing * * * as to the assessment of any property," although it did not contain the clause referring to increase, reduction or abatement of assessments. The second paragraph of section 238 provided that "any taxpayer * * * having been assessed by the order of the County Commissioners * * * after a hearing as hereinbefore provided, may appeal to the State Tax Commission". Assuming that this paragraph limited the right of appeal to a taxpayer who had been assessed, it does not follow that the right to a hearing was so limited. The appeal allowed in the present section 191 to "any taxpayer * * * claming to be aggrieved", is not in terms so restricted.

The concept that a taxpayer may have an interest in, and a legal right to complain of, the underassessment or nonassessment of property owned by other taxpayers, is not foreign to our jurisprudence. In *Schley v. Lee,* 1907, 106 Md. 390, 403, 67 A. 252, 257, a taxpayer, on behalf of himself and others, filed a suit in Equity to enjoin the State Tax Commissioner from making certain deductions in assessing the shares of bank stock, which would result in their underassessment or non-assessment. The Court said: "We have no doubt of the right of the

appellee to resort to equity for relief by injunction in the present case. It is apparent that if the tax commissioner be permitted to make the proposed assessment in accordance with his avowed purpose, serious loss and injury would result to the taxpayers of Montgomery County through the consequent reduction of the basis of taxation for county purposes. From this unlawful assessment, if it should be made, the taxpayer would have no appeal." In *Baltimore Steam Packet Co. v. Baltimore*, 1931, 161 Md. 9, 22, 155 A. 158, 164, the appellant complained that it was taxed on certain vessel property, while its competitors were exempt under what was claimed to be an invalid statute. The Court said: "If this be true, its remedy lies, not in attempting to be relieved of the tax itself, but in restraining the proper taxing officials from allowing the exemption to its competitors. Every taxpayer has a financial interest in seeing that all property in the state, properly the subject of taxation, should be taxed, because, by increasing the taxable basis, the rate necessary for the production of the expenses of the state and the local governments will be reduced, and the individual's tax correspondingly lowered." See also *Liggett v. Lee*, 288 U. S. 517, 540, 53 S. Ct. 481, 77 L. Ed. 929, 85 A.L.R. 699, and *Maxwell v. Baldwin*, 40 Md. 273. (Mandamus to require assessors to proceed.)

The Attorney General argues that to adopt a literal interpretation of the Statute would convert the County Commissioners into a Board of Review or Equalization, open the door to vexatious and frivolous demands, and interfere with the orderly reassessment of property under the continuous assessment plan prescribed by section 175(8) of Art. 81, Code Supp. 1947. That section, however, not only authorizes the State Tax Commission to establish in each county and in Baltimore City five districts or five classes of property and to require that "the property in one of the said districts or classes be reviewed and reassessed each year in rotation", but provides that the Commission "shall have the power at any

401

time to order and enforce a review and reassessment of
all property, or all property of any class * * * in any
district or part of a district * * * if the existing assess-
ments are found to be greater or less than the assess-
ments on other properties possessing similar and com-
parable values." Section 177 of Art. 81 imposes a duty
upon Supervisors of Assessment, to recommend assess-
ments to the County Commissioners, "obtaining all neces-
sary data and information as to the valuation and exist-
ance of property subject to taxation", and reporting to
the Commissioners. See also chapter 185, Acts of 1939,
sections 152A-152H, creating a Bureau of Assessment for
Anne Arundel County. "From these reports and the evi-
dence obtainable, it shall be determined by the respec-
tive County Commissioners * * * whether the assess-
ments against any property or whether any unit of
assessment values in any district shall be changed." (Sec-
tion 177, Art. 81.) The Commissioners likewise "have
the power to obtain additional data, and in case the
assessment so determined upon is not satisfactory * * *
shall order a new valuation."

Upon the present record we must assume that the peti-
tioner was acting in good faith in his proffer to show
that particular properties were underassessed. Of course,
if proof is lacking on that score, the proceeding should
be dismissed. On the other hand, it is clear that upon
a proper showing the Commissioners have the power and
duty to "order a new valuation" at any time before the
date of finality, wholly apart from the continuous assess-
ment plan.

We think the petitioner is entitled, at least, to a hear-
ing under the statute. If the burden of such hearings
becomes too great, we may point out that the County
Commissioners of Baltimore and Montgomery counties
are empowered by sections 186, 186A and 186B of Art.
81, Code Supp. 1947, to create by resolution, an Appeal
Tax Court and to delegate to it the entire assessment
function. Such a system has been in effect in Baltimore

City for many years. In any event, the argument *ab inconvenienti* has little weight as against the allegations of undervaluation and inequity, directly affecting the pecuniary interest of the petitioner.

We think there is likewise no force in the contention that the County Commissioners have an absolute discretion to refuse a hearing. See *4 Cooley, Taxation*, 4th Ed., § 1601, p. 3189. The right of any taxpayer "to demand a hearing" clearly imports a right to be heard, without regard to "formal proceedings." We do not mean to suggest, however, that the County Commissioners have no discretion as to the conduct or extent of the hearing accorded. The inquiry should, of course, be confined to the points in issue.

Upon the question as to whether the remedy for refusal of a hearing should be by way of appeal to the State Tax Commission rather than by mandamus, we find more difficulty. The argument is that an appeal is allowed from "a refusal or failure to make a change" in any assessment, and that the refusal to grant a hearing may be considered as a refusal to make a change. It is well established that were an appeal from the action of an administrative body is provided by statute, a remedy by way of mandamus, injunction or declaratory judgment will be denied. *Stark v. State Board of Registration*, 179 Md. 276, 19 A. 2d 716; *Williams v. Tawes*, 179 Md. 224, 17 A. 2d 137, 132 *A. L. R.* 1105. In the Stark case [179 Md. 276, 19 A. 2d 720], however, it was recognized that mandamus "may be issued to compel a hearing or to come to a decision." The appellant strongly relies upon a certain passage from our recent decision in *Wasena Housing Corp. v. Levay*, 188 Md. 383, 393, 52 A. 2d 903, 908: "Upon receipt of the notice of assessment the appellant could have entered an appeal to the State Tax Commission from the final assessment, or he could have applied to the County Commissioners for a hearing (as the notice invited him to do), on the only point he questioned, *i. e.* whether some of the buildings

were not substantially completed (Art. 81 section 190).
With or without a hearing, he could have appealed to the
State Tax Commission, from the action of the County
Commissioners or their failure or refusal to act. Art.
81 sec. 191."

In that case an action was brought under the refund
statute (art. 81, section 162, Code Supp. 1947) which
denied relief after an assessment "has become final and
has not been modified on appeal * * *, and the only basis
for the refund is a claim that such assessment was
erroneous or excessive." We held that the failure to
appeal from an assessment based on alleged error in a
finding of fact was a bar to the action. Upon receipt of
the notice, two courses were open to the taxpayer (1) to
appeal at once from the assessment without demanding
a hearing, or (2) to apply for a hearing and appeal from
a failure or refusal of the Commissioners to modify the
assessment in the light of the evidence produced by him.
In short, we recognized the taxpayer's right, under the
circumstances of that case, to waive a hearing and appeal
directly from the final assessment. The case is clearly
distinguishable.

The proceeding in the instant case was designed to
force a review and revaluation of the properties listed.
The owners, who were not parties to the case, would
obviously have been entitled to notice before their assess-
ments could be increased. The Commissioners, by refus-
ing a hearing, did not refuse to make a change in those
assessments, but refused to consider whether a new val-
uation was in order. So far from exercising a considered
judgment, they denied, in effect, that they had any
authority to deal with the matter at all. Section 191 does
not in terms provide for an appeal from the refusal of
a hearing, as contrasted with an appeal from a refusal
to abate or modify an existing assessment.

To hold that an appeal lies to the Tax Commission
under such circumstances, would require that body either
to remand the case for a hearing by the Commissioners

(which the Tax Commission has no express authority to do) or to conduct a hearing itself, in which event it would be exercising original jurisdiction, rather than the appellate jurisdiction which is clearly contemplated by sections 192, 193 and 194 of Art. 81. (See, however, section 184 of Art. 81, authorizing mandamus by the Commission, if its instructions are not followed.) In the absence of a hearing by the County Commissioners, there would be no "record of * * * proceedings" (section 192), by "the body to which decision * * * is principally committed." *Hathcock v. Loftin,* 179 Md. 676, 678, 22 A. 2d 479, 480. In *Baltimore v. Shapiro,* 187 Md. 623, 631, 51 A. 2d 273, 276, 277, we said: "It is incumbent upon a party to produce evidence before that [an administrative] body before seeking a review of the Board's action." It does not necessarily follow that a hearing is always indispensible to an appeal, but where there is an express statutory right to a hearing it would seem that the Courts should enforce the right without requiring recourse to a second administrative agency. In *State, ex rel. Holland v. Baltimore County,* 46 Md. 621, 622, it was intimated that mandamus would lie in "a case in which the (county) commissioners have refused to perform an act commanded by law." Compare *Maxwell v. Baldwin, supra.* In the instant case we think the writ was properly issued.

*Order affirmed, with costs.*