STATE TAX COMMISSION OF MARYLAND ET AL. *v.*
BRANDT CABINET WORKS, INC. ET AL.

[No. 166, October Term, 1952.]

534

*Decided June 12, 1953.*

536

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON. JJ.

*Francis D. Murnaghan, Jr., Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellants.

*John Wagaman* for the Brandt Cabinet Works, Inc.

Submitted on brief by *Bruce C. Lightner* for the County Commissioners of Washington County.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Washington County reversing an assessment for the year 1949 made by the State Tax Commission of Maryland, (the Commission), one of the appellants, on improvements to real estate.

Brandt Cabinet Works, Inc., (Brandt), one of the appellees, for many years has had a manufacturing plant on Pennsylvania Avenue in Hagerstown. Certain additions and improvements to its plant were completed

in 1947. For the calendar year of 1948 these new improvements were tentatively assessed by the Supervisor of Assessments for Washington County, (the Supervisor), as follows:

| | |
|---|---|
| Main addition to factory | $104,580.00 |
| Boiler room | 15,500.00 |
| Addition to dry kiln | 13,750.00 |
| | $133,830.00 |

Brandt protested this assessment to the County Commissioners of Washington County, (County Commissioners), who reduced the said assessment on these buildings to a total of $90,000.00. The Supervisor appealed this assessment to the Commission who affirmed the action of the County Commissioners and there was no further appeal. There was testimony that the Commission approved this reduction in assessment for the year 1948 because all the commercial and industrial properties in Washington County would be reviewed the following year and evaluation placed upon them for the purposes of taxes. The Commission did not announce its decision on the 1949 assessment until after January 1, 1950, and therefore the assessment as reduced by the County Commissioners for 1949 became the 1950 assessment.

During 1948 the Supervisor tentatively assessed the aforesaid improvements made in 1947 and 1948 for the calendar year of 1949 as follows:

| | |
|---|---|
| Addition to factory | $ 75,200.00 |
| Boiler room | 14,900.00 |
| Addition to dry kiln | 14,200.00 |
| Loading platform | 1,000.00 |
| | $105,300.00 |

The Supervisor also assessed all of the older buildings of Brandt for $91,000.00, making the entire tentative assessment for 1949 of the buildings of Brandt $197,200.-00. Upon protest the County Commissioners reduced the assessment for 1949 on the improvements made in

1947 and 1948 by $15,300.00 to $90,000.00 and the assessment on the old buildings by $7,300.00 to $84,600.00, making the assessment by the County Commissioners a total of $174,600.00. They used no particular formula in arriving at that reduction. The Supervisor appealed to the Commission and the action of the County Commissioners was reversed and the Commission found as a fact based upon the evidence offered that the assessment should be $197,200.00 and reinstated the tentative assessment made by the Supervisor.

From the decision of the Commission, the County Commissioners and Brandt appealed to the Circuit Court for Washington County. The trial judge, by order passed on December 29, 1952, reversed the order of the Commission and remanded the proceedings to the said Commission for further action. From that order the Commission and the Supervisor appeal to this Court.

By Article 81, Section 194, 1939 Code, on appeal a taxpayer may appeal from the decisions of the Commission, in the exercise of its appellate jurisdiction, on questions of law only, to the Circuit Court. It is admitted that the assessment of the new buildings erected in 1947 and 1948 was based on the actual construction cost of erecting those buildings in 1947 and 1948. That cost was $179,132.00. This assessment was made at the time when the instructions from the Commission called for a blanket relation back to 1941-1942 price levels. *Rogan v. Commissioners of Calvert County,* 194 Md. 299, 71 A. 2d 47. After conversion to the 1941-1942 levels the assessment on the new buildings of $105,200.00 was arrived at.

As to the old buildings, built between 1906 and 1926, the Supervisor used what is known as the Official Manual for Tax Assessors, (the Manual), put out by the Commission. The appellants state that the compilation of statistics therein were secured from experts in the building field, construction engineers, appraising engineers and Department of Labor statisticians. This Manual relates general average construction costs for various

types of buildings to their volume in cubic feet. The Manual is expressed as to reconstruction costs in terms of the 1941-1942 price levels. It also contains a table by which reconstruction costs, determined by reference to the cubic foot factor in the Manual, may be related to later years. The Commission states: "In order to eliminate unusual inflationary considerations in determining value for the type of construction used on the older buildings of the Brandt Cabinet Works, the Supervisor, in pursuance of general instructions issued by the State Tax Commission, used the cubic foot factor indicated by the Manual without conversion to 1948 or 1949, on the theory that appraisal at the 1941-1942 price level, together with application of depreciation factors in the manner called for in the Manual, reached actual cash value undistorted by temporary inflation." Appraisals at 1941-1942 price levels were made at that time throughout the whole State.

The trial judge found that it was erroneous to arrive at the value of the Brandt property by using the cubic foot method as to the old buildings and the 1947 and 1948 cost adjusted to the 1941-1942 level as to the new buildings. He pointed out that by using the cubic foot method as to the old property of Brandt and the 1947 and 1948 cost, adjusted to the 1941-1942 levels, as to the new parts of the property an assessment equivalent to thirty-five cents per cubic foot was reached on all the Brandt property while as to other comparable factory buildings in Hagerstown the assessments were based on cubic foot values of from fourteen to twenty-one cents per cubic foot, after depreciation allowances, resulting in much lower assessments. He also pointed out that at least two of these comparable factory buildings had a floor loading capacity of 200 pounds per square foot, and, due to government restrictions, when Brandt's new building was erected it had a loading capacity of 85 pounds per square foot. He further found that in the old part of the Brandt real estate the office portion was assessed at thirty-five cents per cubic foot

and that this figure is not applied to the office space of other commercial buildings. He also found certain mathematical errors in the application of the cubage method to the old Brandt buildings. Based on these findings he was of opinion that Brandt has been intentionally discriminated against and its assessment was arbitrary and unreasonable.

There was testimony here that other commercial buildings erected in 1946 and 1947 were assessed on the basis of cost rather than on the cubic foot basis. Mr. Simon Clopper, the Supervisor, testified that the Pangborn, Jamison and Fairchild additions built at that time were assessed on the basis of cost, rather than on the cubic foot basis, because it was thought that such an assessment was more reliable than cubage. Those costs, as in the case of Brandt, were related back to 1941-1942. The appellees claim that, if a building is built on a 24 hour a day schedule at the usual labor rate of time and one-half for 16 hours of overtime a day, it could not be contended on account of this overtime work a higher tax assessment is justified because of the increased cost of overtime labor. There is nothing in this case to show that there was great increase of cost on account of overtime work. The president of Brandt testified that in 1945 he received from a reliable construction and engineering firm an estimate of $95,948.00 for building same buildings which in 1947 cost $179,132.00. These buildings are now assessed for $105,300.00, a difference of approximately ten percent over the 1945 estimate. The value of property has certainly risen much more than ten percent since 1945.

As to the contention that the Manual should have been used in assessing the new buildings, there was testimony that if the Manual were so used, because of their construction, the floor, the roof, the interior, the size and the square foot area, a factor of thirty-five cents would be applied from the Manual and the addition to the factory would have been assessed at a figure of from $76,000.00 to $78,200.00. The assessment on the cost

basis is $75,200.00. On a new building the cost of construction is practically current. Reconstruction costs are more reliable in reaching "full cash value" over hypothetical estimates and approximation. *State, ex rel. Hennessey v. Milwaukee*, 241 Wis. 548, 6 N. W. 2d 718. To hold otherwise would leave from consideration an important factor which many courts have followed for assessments. See Annotation, *Original Cost of Construction or Reproduction Cost as Proper Factors in Assessing Real Property for Taxation*, 104 A. L. R. 790, 791, where it is said: "It is well established that ordinarily, apart from special statutory requirements to the contrary, original cost of construction is a proper factor for consideration in the valuation of improved real property for purposes of taxation; the theory apparently being that, while this is not the final test of value, it is or may be a criterion of present value, when allowance is made for depreciation." It is set out in *Bryant Park Building, Inc. v. Acunto*, 133 Misc. 225, 231 N. Y. S. 451: "However, in the valuation of buildings for tax purposes, the structural value of the building is its value for assessment purposes." See also *Underwood Typewriter Company v. City of Hartford*, 99 Conn. 329, 122 A. 91, 94, where it is said: "One of the means which have been approved and sometimes used is to ascertain the original cost of construction and improvements, deducting therefrom depreciation, and adding the increase in cost of materials and labor, if at the time of valuation there is such increase over the cost at the time of construction." We see no reason why buildings only two years old should necessarily be compared to much older buildings. When a building is twenty years of age or more, the original cost is of minor significance in determining its value today on account of the changes in price levels during the inflationary periods before, during, and after the depression. *Alfred J. Sweet Inc. v. Auburn*, 134 Me. 28, 180 A. 803, 104 A. L. R. 784. A manual such as that used by the Commission appears to be a more reliable basis for determining full cash value of

old buildings than the cost of construction twenty years ago, comparing the value of the dollar then to its value today. It appears that on the other older factory buildings in Hagerstown, the Supervisor used the Manual based on the number of cubic feet, and on the newer factory buildings he used the original cost as a basis of assessment. The difference in the cubic foot factor used on the other old commercial buildings in Hagerstown is explained by the Commission as due to the fact that the other buildings are of much greater size, as compared with the size of the recent additions made by Brandt, and as a building increases in size the cost per cubic foot decreases.

As to the mathematical errors found by the trial judge in the application of the cubage method to the old Brandt buildings, it is difficult from the record before us to determine such errors and whether they were brought to the attention of the Commission. *Rogan v. Commissioners of Calvert County, supra,* 194 Md. at page 310. If any such errors occurred they are explained by the Commission in the rounding off as the result of the application of the cubage method "to individual idiosyncracies of particular buildings for which no generalized charts can ever make allowance." As to the argument that the assessment for 1949 here disputed was higher than the 1948 and 1950 assessment, each annual assessment can present its own problem regardless of assessments for other years. *State Tax Commission v. C. & P. Telephone Co.,* 193 Md. 222, 235, 66 A. 2d 477. As to the claim that no depreciation was allowed on these buildings then two years of age, the difference between the cost of construction and the assessment would easily absorb such an amount. As to the contention that the office space in the old buildings was not assessed comparably to that of other factory offices, the testimony is too meager to afford the basis of a comparison or to show that any difference in treatment was more than an error in judgment.

As stated in the case of *Rogan v. Commissioners of Calvert County, supra,* the Legislature more than thirty-five years ago imposed upon the State Tax Commission as a body of experts, and not upon the courts, the duty of supervising the assessment of property in this State, equally among the taxpayers. Code 1939, Article 81, Section 175(4). Perfect uniformity of assessment is impossible. Code 1939, Article 81, Section 11, provides that the assessment of property such as that before us here be made "at the full cash value thereof on the date of finality." Usually the cash value of property is the market value. As there had been no sales of property, comparable to that here in dispute within a reasonable period of time, it was practically impossible to arrive at the market value. Of course, current market prices in making assessments are not always a guide, for at times market conditions may be temporary and abnormal. It is not the function of the courts to formulate instructions for the Supervisor of Assessments. It is the duty of the Commission to to formulate from time to time a uniform plan for the assessment of property, which shall be followed strictly by the County Commissioners and by all County assessors. Here, as to the new commercial buildings in Hagerstown, the assessment was based upon the cost of recent construction. This current cost appears to be a practical guide in arriving at "full cash value". Here a substantial reduction was allowed to 1941-1942 levels. This should not result in an assessment for more than full cash value. In assessing the old commercial buildings in Hagerstown the same Manual was used. Therefore a uniform plan was used for the assessment of the new buildings in Hagerstown and another uniform plan was used for the assessment of the old buildings in that area. This could hardly result in intentional discrimination against Brandt or in arbitrary and unreasonable assessment. It has not been shown that either plan resulted in assessments of more than full cash value. The function of the court on appeal is to

consider the record sent in from the Commission and such other testimony as may be produced and from that testimony and the record before it to determine whether there was error. *Seaboard Commercial Corporation v. State Tax Commission,* 181 Md. 234, 242, 29 A. 2d 294. The burden is therefore upon the appellees to show that the Commission committed error. *State Tax Commission v. C. & P. Telephone Company, supra,* 193 Md. at page 231, 66 A. 2d 477.

We have held that under the statutes a taxpayer has the legal right to complain of under assessment of property owned by other taxpayers and that a writ of mandamus will issue to compel the County Commissioners for a hearing on that issue. *County Commissioners of Anne Arundel County v. Buch,* 190 Md. 394, 58 A. 2d 672, 5 A. L. R. 2d 569. It is said in *Rogan v. Commissioners of Calvert County, supra;* "The purpose of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his property. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed. When their actions are assailed, the burden of proof is upon the complaining party. *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; *Sioux City Bridge Co. v. Dakota County, Nebraska,* 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979. * * * The Maryland law requires that all property shall be assessed 'at the full cash value

thereof on the date of finality.'   Code 1939, art. 81, sec. 11.   Ordinarily the cash value of property is the market value.   *Schley v. Montgomery County Com'rs.,* 106 Md. 407, 410, 67 A. 250.   But, as Justice White said in *San Francisco National Bank v. Dodge,* 197 U. S. 70, 25 S. Ct. 384, 386, 49 L. Ed. 669, the market value of property is the value a willing purchaser will pay for it to a willing seller in open market, eliminating exceptional and extraordinary conditions giving the property temporarily an abnormal value.   The Court cannot rule as matter of law that assessing authorities must be guided entirely by current market prices in making the assessments, regardless of how 'thin' the 'spot market' may be or how much it may be affected by conditions believed to be temporary and abnormal. * * * We accept the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made.   *Doty Lumber & Shingle Co. v. Lewis County,* 60 Wash. 428, 111 P. 562, Ann. Cas. 1912B, 870." 194 Md. 309-313.   No charge of fraud is made in the instant case.   Here the appellees were given a large reduction in assessment from actual cost.   The following in *State Tax Commission v. C. & P. Telephone Company, supra,* is appropriate here: "It does not appear to this Court that there is such discrimination as to make appellee's assessment unlawful.   There is no evidence of bad faith in this case.   The Commission may have made some error in judgment which will be corrected and reflected in assessments in later years.   *Chesapeake & Potomac Telephone Co. v. State Tax Commission,* 158 Md. 512, 520, 148 A. 832. * * * Perfect equality is unattainable.   If assessments could be upset by comparison of a few widely different properties, on the basis of a selected few of the many elements or evidences of value, no assessment could stand.   Furthermore, if other utilities have been under-assessed, appellee's remedy lies not

in attempting to be relieved of the assessment itself but in restraining the Commission from not properly assessing other utilities. It was said by this Court in the case of *Baltimore Steam Packet Co. v. Mayor & City Council of Baltimore,* 161 Md. 9, at page 22, 155 A. 158, at page 163: 'Upon a full consideration of the contentions of the appellant, it would seem that its real complaint is that it is now taxed, while competitors are exempt, resulting in a pecuniary advantage to the competitors over it to the extent of the tax which it is required to pay. If this be true, its remedy lies, not in attempting to be relieved of the tax itself, but in restraining the proper taxing officials from allowing the exemption to its competitors. Every taxpayer has a financial interest in seeing that all property in the state, properly the subject of taxation, should be taxed, because, by increasing the taxable basis, the rate necessary for the production of the expenses of the state and local governments will be reduced, and the individual's tax correspondingly lowered. Such a proceeding was approved by this court in *Schley v. Lee,* 106 Md. 390, 67 A. 252.' *Board of County Commissioners of Anne Arundel County v. Buch,* 190 Md. 394, 399, 58 A. 2d 672, 675; *Atkinson v. Sapperstein,* 191 Md. 301, 308-309, 60 A. 2d 737, 739." 193 Md. 235, 236.

We fail to find here that an intentionally arbitrary and unreasonable assessment has been made against Brandt or that there has been intentional discrimination against Brandt in this assessment. We will therefore reverse the order and remand the case for the passage of an order affirming the assessment made by the State Tax Commission.

*Order reversed, with costs, and cause*

*remanded for the passage of an order affirming the assessment of the State Tax Commission.*